255 N.J. Super. 398 (1992)
605 A.2d 297
STATE OF NEW JERSEY, PLAINTIFF,
v.
SEAN SPEID AND APRIL ALEXANDER, DEFENDANT.
Superior Court of New Jersey, Law Division Hudson County.
Decided February 7, 1992.
*400 Gerard Breland, Asst. Prosecutor for the State.
Robert J. Desmond, for Defendant, Sean Speid.
Abrams & Wofsy (Arthur J. Abrams, Esq.) for Defendant, April Alexander.
DE STEFANO, J.S.C.
When the police have probable cause, they may lawfully enter a home, conduct a protective sweep and secure the premises in anticipation of obtaining a search warrant. If the police thereafter obtain a consent to search, they must be mindful of the preference in the law that searches of a home be conducted pursuant to a warrant. The State must be prepared to prove by clear and positive evidence that a valid waiver was lawfully obtained. The State in this case has not met that burden, and defendant's motion to suppress evidence is granted.[1]
On July 2, 1989, the Jersey City Narcotics Squad conducted a surveillance outside a two family home located at 135 Monticello Avenue, Jersey City. The defendants, Sean Speid and April Alexander, entered the home's ground floor, stayed inside a short time, exited and sold small vials of cocaine to at least two purchasers. The sales occurred on the sidewalk outside the home. Ms. Alexander used a key in her possession to enter. The premises are rented to Ms. Alexander's mother, Katie.
The police arrested the two purchasers around the corner from the purchase site. Sean Speid later left the area in front *401 of the premises and walked west on Emory Avenue towards Bergen Avenue. The police decided to close in and arrest Alexander and Speid. Ms. Alexander was taken into custody in front of her home. Speid was apprehended days later.
Four police officers entered the Alexander home without benefit of a warrant. Once inside, it was announced that the premises were being secured until a search warrant was acquired. Ms. Alexander's siblings were rounded up and placed in the kitchen. April Alexander was read her "Miranda" warnings. When Katie Alexander arrived home from work, she was confined to the kitchen with the rest of her family. Katie Alexander asked to use her own bathroom, and was told in uncouth terms that she could urinate on the floor.
The police swept through the rooms and began searching. Sixty-one vials of crack-cocaine were found in April Alexander's bedroom. The police then advised Ms. Alexander that they were going to obtain a warrant. She was told that if a search warrant was obtained, and drugs or other items of contraband found on the premises, then not only would Ms. Alexander be arrested, but her mother, siblings and her brother's girlfriend would also be taken into custody. Ms. Alexander was repeatedly exhorted, in language peppered with expletives, to sign the consent form and permit the search of her bedroom. She eventually consented and signed a waiver.[2],[3]
The State argues that the search of the Alexander home can be supported by two theories. First, the search is based upon *402 probable cause and exigent circumstances, second, the search is based upon a valid consent to search.
A search and seizure of a citizen's home without a search warrant is presumptively unreasonable. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Warrantless searches are prohibited by the Fourth Amendment to the U.S. Constitution, absent an exception to the warrant requirement. A search based upon probable cause and exigent circumstances is permitted. State v. Lewis, 116 N.J. 477, 561 A.2d 1153 (1989). To support an exigent circumstances exception to the warrant requirement, there should be a clear showing of probable cause as opposed to the minimum showing of probable cause requisite to secure a search warrant. State v. Lewis, Id., at 486, 561 A.2d 1153. The court finds that the police clearly had probable cause to believe that narcotics were stored inside the Alexander home. Their observations of the defendants' entering and exiting the Alexander home for short periods, and the two drug sales consummated in front of the home, support this conclusion. State v. Novembrino, 105 N.J. 95, 519 A.2d 820 (1987).
The question of exigent circumstances is more problematic. Just what constitutes exigent circumstances has been the subject of considerable debate. State v. Hutchins, 116 N.J. 457, 561 A.2d 1142 (1989); State v. Lewis, 116 N.J. 477, 561 A.2d 1153 (1989). The Third Circuit in U.S. v. Rubin, 474 F.2d 262 (3rd Cir.1973), has suggested circumstances which courts have looked at:
"(1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge "that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic." (Id.) at 268-69 [citations omitted])
Threatened destruction of evidence is often cited as an exigent circumstance in drug cases. The problem presented is *403 that in virtually every drug case, evidence may be merely threatened with destruction, and an officer with probable cause could then avoid the warrant requirement entirely. U.S. v. Davis, 423 F.2d 974 (5th Cir.1970); cert. den., 400 U.S. 836, 91 S.Ct. 74, 27 L.Ed.2d 69 (1971).
The State's claim of exigency rings hollow. It is not clear from the record if the officers who arrested April Alexander were aware that Mr. Speid had eluded capture, placing him in a position to warn anyone inside the Alexander apartment. It is also unclear if these officers knew that anyone was in the Alexander home, although with benefit of hindsight, we know that family members were present. What is most telling to this court however, is that upon entry of the home, the police announced to all present that the premises were being secured pending receipt of a search warrant. The officers at the scene apparently did not believe they had circumstances exigent enough to conduct a search without obtaining a warrant. Although the State has made a clear showing of probable cause that narcotics were present, they have not shown circumstances exigent enough to excuse a search warrant.
Moving to the issue of consent, the defendant's threshold argument is that the police had no right to enter the Alexander residence without a search warrant, and all drugs seized were the fruit of this illegal entry. It is generally recognized that the home must be given the highest degree of protection.
"A person's home holds a favored position in the list of those areas which are protected from unreasonable searches and seizures. Different considerations apply to movable property such as boats and motor vehicles. The high degree of judicial sanctity which the Courts have accorded to dwellings is based upon the concept of privacy and the right to be left alone." U.S. v. Davis, Id. at 977.
The police may, with probable cause, enter a home to secure it while a search warrant is obtained. Segura v. U.S., 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1983); State v. Lewis, 116 N.J. 477, 561 A.2d 1153 (1989). In Segura v. U.S., the court held:

*404 "Securing a dwelling on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents. We reaffirm at the same time, however, that, absent exigent circumstances, a warrantless search  such as that invalidated in Vale v. Louisiana, 399 U.S. 30, 33-34 [, 90 S.Ct. 1969, 1971-1972, 26 L.Ed.2d 409] (1970)  is illegal." Id. at 810 [104 S.Ct. at 3388].[4]
The police must secure a warrant as soon as practicable, minimizing the time they are in the home without a warrant. U.S. v. Aquino, 836 F.2d 1268 (10th Cir.1988). Although a written search warrant application is preferred, where exigent circumstances are present, a telephone-authorized search warrant may be obtained. State v. Valencia, 93 N.J. 126, 459 A.2d 1149 (1983).
The N.J. Supreme Court observed that when removal of drugs, rather than destruction, is offered as an exigent circumstance, "a collateral issue is whether the physical character of the premises is conducive to effective surveillance, as an alternate to a warrantless entry, while a warrant is procured." State v. Lewis, Id. at 485, 561 A.2d 1153.
Where the police lawfully enter a home to secure it, it is permissible to do a quick, limited, protective sweep to ensure their own safety. This protective sweep is designed to detect persons and not things. Persons with weapons might secrete themselves in a closet, under a bed or behind furniture. The sweep should be no more intrusive than is necessary to ensure the safety of the officers. Compare U.S. v. Jackson, 700 F.2d 181 (5th Cir.1983); U.S. v. Agapito, 620 F.2d 324 (2nd Cir.1980); cert. den. 449 U.S. 834, 101 S.Ct. 107, 66 L.Ed.2d 40 (1981); U.S. v. Bowdach, 561 F.2d 1160 (5th Cir.1977); State v. Miller, 126 N.J. Super. 572, 316 A.2d 16 (App.Div. 1974); State v. Galvin, 161 N.J. Super. 524, 391 A.2d 1275 (Law Div. 1978); Fiske, *405 "Clean Sweeps: Protecting Officers' Safety and Preventing Imminent Destruction of Evidence," 55 U.Chi.L.Rev. 684 (1988). The police may detain people in the premises while a warrant is sought, provided there is probable cause. Innocent third parties should be allowed to leave. W. LaFave, Search and Seizure, Sect. 6.5(c) (1987).
In this case the police did more than merely sweep the premises, they in fact searched them prior to obtaining a consent to search or warrant. Securing a consent after the fact does not validate what has gone before. The discovery of evidence in this context would be a direct product of unconstitutional conduct. Nardone v. U.S., 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939).
The police may seek a consent to search as an alternative to obtaining a warrant. In some circumstances this option is less onerous than impounding the premises while a warrant is sought. W. LaFave, Search and Seizure, Sect. 6.5(c) (1987).
It is settled law that, "where valid consent is given, a search may be conducted without a warrant and without probable cause." State v. Hladun, 234 N.J. Super. 518, 521, 560 A.2d 1348 citing Vale v. Louisiana, Id. The consent must be voluntarily given, and not the result of threat or coercion, express or implied. "Voluntariness is a question of fact to be determined from all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 248-249, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854, 875 (1973); State v. King, 44 N.J. 346, 209 A.2d 110 (1965). An essential element of voluntariness is the accused's knowledge of her right to refuse consent. State v. Johnson, 68 N.J. 349, 354, 346 A.2d 66 (1975). The issue of voluntariness turns on, "whether a defendant's will was overborne in a particular case." Schneckloth v. Bustamonte, Id. 412 U.S. at 226, 93 S.Ct. at 2047. "If the individual has merely acquiesced in a show of authority, he should not be found to have consented." U.S. v. Vasquez, 638 F.2d 507 (2nd Cir.1980); cert. den., 454 U.S. 975, 102 S.Ct. 528, 70 L.Ed.2d 396 (1981).
*406 This Court is haunted by the visceral sense that the police had no intention of securing a warrant, rather, they pressured April Alexander to consent. None of the officers actually left to secure a search warrant, or attempted to get a telephonic warrant. The treatment of the members of the Alexander family, especially the language and deportment of the police, was less than professional. This conduct had the propensity to create an inherently coercive atmosphere. Contrast Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1979) [citing a "congenial atmosphere" in defendant's home as showing police did not engage in flagrant misconduct requiring exclusion of defendant's admissions.]
Moreover, this court is also satisfied that the consent form was not read to the defendant, and her legal right to refuse consent was not fully and adequately explained to her. The State has the burden of proving by clear and positive evidence that the defendant's consent was knowing and voluntary. State v. Johnson, 68 N.J. 349, 346 A.2d 66 (1975); State v. Hladun, 234 N.J. Super. 518, 560 A.2d 1348 (Law Div. 1989), [citing W. LaFave, Search and Seizure, Sect. 8.2 (1987) listing factors to be weighed by a court in determining if a consent is voluntary.] The State has failed to meet this burden.
Accordingly, the evidence seized in April Alexander's bedroom is suppressed.
NOTES
[1] This is a refinement of an Oral Opinion.
[2] In assessing credibility, the Court credited the version of the events that occurred inside the Alexander home as related by the Alexander family members that testified. Their testimony was more consistent, and in this court's view, more believable. The testimony of the officers was, at many crucial points, contradictory.
[3] Ms. Alexander could consent to the search of her bedroom. State v. Douglas, 204 N.J. Super. 265, 498 A.2d 364 (App.Div. 1985); State v. Miller, 159 N.J. Super. 552, 388 A.2d 993 (App.Div. 1978).
[4] See W. LaFave, Search and Seizure, Sect. 6.5(c) (1987). For a discussion of why an initial search to impound the premises may be technically illegal, but of little practical significance because it will not ordinarily result in exclusion of evidence.