813 A.2d 1238

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
GREGORY MYERS, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted December 17, 2002—Decided January 17, 2003.

Before Judges SKILLMAN, CUFF and WINKELSTEIN.

*James F. Avigliano,* Passaic County Prosecutor, attorney for appellant (*Gary H. Schlyen,* Special Deputy Attorney General, Acting Chief Assistant Prosecutor, of counsel and on the brief).

*Sciro & Marotta,* attorney for respondent (*John Vincent Saykanic and Frank J. Sciro, Jr.,* on the brief).

The opinion of the court was delivered by

WINKELSTEIN, J.A.D.

Defendant Gregory Myers was charged with third-degree possession of a controlled dangerous substance (heroin), pursuant to *N.J.S.A.* 2C:35–10a(1) (count nine); third-degree possession of a controlled dangerous substance with intent to distribute, pursuant to *N.J.S.A.* 2C:35–5a(1) and b(2) (count ten); third-degree possession of a controlled dangerous substance with intent to distribute

within 1000 feet of a school property, pursuant to *N.J.S.A.* 2C:35–7 and *N.J.S.A.* 2C:35–5a (count eleven); and second-degree possession of a controlled dangerous substance with intent to distribute within 500 feet of a public park, pursuant to *N.J.S.A.* 2C:35–7.1 and *N.J.S.A.* 2C:35–5a (count twelve).

Defendant filed a motion to suppress the evidence seized from 162 16th Avenue in Paterson. The Law Division granted the motion. On leave to appeal, we reverse.

The facts leading to the search need to be recounted in some detail because the investigation which resulted in the seizure from 162 16th Avenue included both a search warrant for that address, as well as a search warrant for an apartment at 217 16th Avenue, about one block away. Below are the facts as presented at the suppression hearing and in the affidavits supporting the search warrants.

On March 9, 2001, Municipal Court Judge Graves issued a search warrant for 217 16th Avenue. The warrant, which was not challenged, was supported by an affidavit executed by Detective Charles M. Cobb and included the following information: The police had received an anonymous report during the week of February 18, 2001, from a concerned citizen who had observed what he or she believed to be drug transactions in the area of 217 16th Avenue. Surveillance during that week and during the week of March 4 revealed an unidentified black male engaging in what appeared to be numerous hand-to-hand drug transactions. The male had entered and exited the premises at 217 16th Avenue to obtain the drugs being sold. Detectives obtained information from a "reliable confidential informant" regarding drug transactions in the area, and were advised that drug dealers sometimes kept narcotics in that premises.

On the day of the search, Detective Cobb saw defendant leave the garage of his residence at 162 16th Avenue and walk towards the "16th Avenue Park" where he met with one of the "aforementioned dealers." Cobb observed defendant reach into his waistband and take out a "suspected [b]rick of [h]eroin" and give it to

one of the "suspected drug dealers." That dealer was lost from the detective's sight, but later emerged from the premises at 217 16th Avenue.

Upon execution of the warrant at 217 16th Avenue, law enforcement officials recovered 213 glassine envelopes stamped "METHADONE," each containing "a white powder substance, ... [of] suspected heroin." Four "[bricks]" of heroin were "wrapped together with magazine paper." Also recovered was one semi-automatic handgun, several rounds of shotgun and handgun ammunition, and $261 in currency. The police arrested four people inside the premises; defendant was not one of them.

After the police executed the warrant for 217 16th Avenue, Detective Virginio Formentin was dispatched to defendant's residence at 162 16th Avenue. Formentin testified that he and other detectives "secured" the premises as Detective Cobb and another officer prepared a search warrant request for that address. 162 16th Avenue is a residential duplex with a garage. According to Formentin, the garage door was in the "up position" and he entered to "better secure the location and for [the officers'] safety" and to ensure that no one destroyed evidence. Formentin indicated that his concern for the officers' safety and destruction of contraband was based on the "handguns"[1] found at 217 16th Avenue and his belief that there could be more drugs at 162 16th Avenue. Formentin saw that "[t]here was an additional doorway to a room within the garage" and that the door was open "just about all the way." While he was in the garage, Formentin looked through the doorway and saw what appeared to be two bricks of heroin in the other room.

Detective Cobb and another officer supported their request for the search warrant for 162 16th Avenue with the following information: 1) the March 10, 2001, surveillance of two unidentified males, whom the officers believed to be drug dealers, making "numerous hand-to-hand drug transactions"; 2) Detective Cobb

---

[1] The record indicates the police found only one handgun at 217 16th Avenue.

saw defendant, who was known to the police from another investigation, leave 162 16th Avenue and give what appeared to be a brick of heroin to one of the "dealers"; 3) the "dealer" was later seen leaving the premises at 217 16th Avenue; 4) after the heroin exchange, defendant was picked up in a car and the officers lost sight of him; 5) the officers found heroin, a gun, bullets and cash when searching 217 16th Avenue; 6) "[w]hile securing the apartment [at 162 16th Avenue], Detective Formentin ... observe[d] what appeared to be (2)[b]ricks of suspected [h]eroin"; and 7) "[t]he two bricks of suspected [h]eroin inside 162 16th Avenue appeared to be identical to the ones recovered from 217 16th Avenue" and Cobbs had "conducted a field test on a small portion of the suspected [h]eroin from [217] 16th Avenue that was positive for the presence of [a controlled dangerous substance]."

After waiting at 162 16th Avenue for approximately one to one and one-half hours, the officers obtained the search warrant and searched the premises. They found "approximately 847 glassines [of] suspected heroin" plus fifteen bricks of heroin and "two boxes of .38 caliber bull nose bullets."

Although during the suppression hearing the search warrants and affidavits were not admitted in evidence, during the State's summation the motion judge asked the prosecutor if he could see them. The prosecutor gave the judge copies of the affidavits and warrants for both 217 and 162 16th Avenue. Thus, although not formally moved as part of the record, since the motion judge had an opportunity to review the documents and relied upon them, we consider these documents as part of the record.

We first address whether the police had a right to secure the garage while waiting for the search warrant. In other words, whether exigent circumstances justified the securing of the premises at 162 16th Avenue while the police sought a search warrant.

Law enforcement officers must obtain a warrant before searching a person's property, unless the search " 'falls within one of the recognized exceptions to the warrant requirement.' " *State*

*v. DeLuca,* 168 *N.J.* 626, 631, 775 *A.*2d 1284 (2001) (quoting *State v. Cooke,* 163 *N.J.* 657, 664, 751 *A.*2d 92 (2000)). The need for the police to obtain a warrant may be excused if both exigent circumstances and probable cause are extant. *Kirk v. Louisiana,* 536 U.S. 635, ——, 122 *S.Ct.* 2458, 2459, 153 *L.Ed.*2d 599, 603 (2002); *DeLuca, supra,* 168 *N.J.* at 632, 775 *A.*2d 1284.

■ Exigent circumstances are not easily defined. "[T]he term takes on form and shape depending on the facts of any given case." *Cooke, supra,* 163 *N.J.* at 676, 751 *A.*2d 92. The application of the doctrine of exigent circumstances is fact-sensitive. *DeLuca, supra,* 168 *N.J.* at 632, 775 *A.*2d 1284. In *State v. Valencia,* 93 *N.J.* 126, 459 *A.*2d 1149 (1983), the Court identified some of the relevant factors a court may consider to determine whether exigent circumstances exist: 1) degree of urgency and time needed to obtain a warrant; 2) reasonable belief that contraband is about to be removed; 3) possibility of danger to police officers guarding the site; 4) information showing that the owners of the contraband know the police are "on their trail"; 5) "the ready destructibility of the contraband" and "the knowledge that efforts to dispose of [the contraband] and to escape are characteristic behavior of persons engaged in this [type of crime]." *Id.* at 136–37, 459 *A.*2d 1149 (citing *United States v. Manning,* 448 *F.*2d 992, 998–99 (2d Cir.1971)). *See also State v. Smith,* 129 *N.J.Super.* 430, 435, 324 *A.*2d 62 (App.Div.) (circumstances are exigent when they "preclude expenditure of the time necessary to obtain a warrant because of a probability that the suspect or the object of the search will disappear, or both"), *certif. denied,* 66 *N.J.* 327, 331 *A.*2d 27 (1974).

■ Here, law enforcement authorities had reason to believe that defendant was engaged in drug trafficking on 16th Avenue, and transporting drugs from his apartment to the site of the drug sales approximately one block away. The police saw defendant, who had been frequently observed at the scene of the drug sales, walk from his apartment to the area where the drug sales took

place. Police saw him hand a package that appeared to be illegal drugs to one of the persons engaged in the drug buy.

Moreover, the circumstances surrounding the search of 162 16th Avenue created a substantial degree of urgency. The warrant request for the premises at 162 16th Avenue took place immediately after the search of 217 16th Avenue, where police discovered illegal narcotics, a weapon, and ammunition for another weapon. Defendant had been observed engaging in drug transactions with the individuals who were arrested upon execution of the first warrant, and defendant's whereabouts were unknown at the time law enforcement authorities entered the duplex where he resided. After the first search warrant was executed, the participants were aware of police involvement. Formentin testified that he believed evidence would be destroyed if he and the other officers did not secure the premises. It was therefore reasonable for the police to believe that defendant would learn of the search of 217 16th Avenue and possibly return and destroy any drugs or contraband which may have been located at 162 16th Avenue.

There also existed a threat of danger to the police officers guarding the site. Formentin testified that he was concerned for the other officers' safety. The police also had a reasonable concern that defendant would have access to a weapon, inasmuch as shotgun shells were found during the execution of the search warrant at 217 16th Avenue, but the shotgun was not.

Furthermore, heroin is easily destructible. A sentence for a person convicted of illegal drug distribution may be severe, causing the person who suspects that police may search his or her premises to dispose of the potential evidence. That is what the police believed could happen here. Therefore, under these exigent circumstances, it was not unreasonable for the police to enter the garage to better observe the apartment in which defendant resided.

We next turn to whether the warrant for the search of 162 16th Avenue was supported by probable cause. The affidavit

supporting the warrant included the following information. On the same day the officers observed drug transactions at 217 16th Avenue, they observed defendant leaving his home at 162 16th Avenue and give a brick of suspected heroin to one of the dealers at 217 16th Avenue. Once the police found drugs, a weapon and ammunition at 217 16th Avenue, it was reasonable to conclude that defendant, who had been directly observed engaging in the drug transactions in the area of 217 16th Avenue, stored drugs in his apartment. That information was more than sufficient to satisfy probable cause for issuance of the search warrant for defendant's apartment. *See United States v. Corral*, 970 *F*.2d 719, 728 (10th Cir.1992); *United States v. McNeese*, 901 *F*.2d 585, 596 (7th Cir.1990); *United States v. Angulo–Lopez*, 791 *F*.2d 1394, 1399 (9th Cir.1986); *State v. Sykes*, 412 *N.W*.2d 578, 583–84 (Iowa 1987). *Compare State v. Fariello*, 71 *N.J.* 552, 565, 366 *A*.2d 1313 (1976) (where an affidavit stating only that the investigating officer found marijuana in an automobile located on the premises was not sufficient probable cause to establish crimes being committed in the premises).

A search based on a properly obtained warrant is presumed valid. *State v. Sullivan*, 169 *N.J.* 204, 211, 777 *A*.2d 60 (2001). The defendant has the burden of proving the invalidity of the search made pursuant to a warrant—"that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable." *Ibid.* (quoting *Valencia, supra*, 93 *N.J.* at 133, 459 *A*.2d 1149). Here, defendant has not met that burden.

To summarize, we find 1) the police entry into the garage was justified by exigent circumstances, and 2) probable cause existed to support the search warrant for 162 16th Avenue. We reverse.[2]

---

[2] We decline to address the State's "expectation of privacy" argument since it was not raised before the Law Division. *See* Pressler, *Current N.J. Court Rules*, comment on *R*. 2:6–2 (2003).