JUSTICE ALBIN,
dissenting.
The constitutional protection against the unreasonable search and seizure of a home is enshrined in the 1791 Federal Bill of Rights and our 1844 State Constitution.[1] The Founders put in *113 place cheeks against the abuse of governmental authority to ensure the sanctity of the home. Since the beginning of the Republic, our constitutional jurisprudence has forbidden law enforcement officials from seizing or entering a home without a warrant, subject to very limited exceptions. In the modern era, the warrantless seizure or entry of a home is impermissible absent consent or exigent circumstances. That simple formulation of the Fourth Amendment and Article I, Paragraph 7 of the New Jersey Constitution has been clear for decades. It should have been clear to the State Police detective who trampled on Denise Brown’s rights in 2008.
The police had reason to believe that Brown was given a stolen locket. She was not suspected of committing a theft or knowingly receiving stolen property. The police had sufficient time to secure a warrant for the search of her home, but chose instead to attempt to obtain her consent to search. She lawfully exercised her right to deny the police consent to rummage through every drawer in her home in search of the locket. For exercising that right, the police seized her home for six hours without a warrant, even though no exigent circumstances justified their doing so. Brown was rendered a virtual prisoner in her own home, denied even the right to use her bathroom beyond the prying eyes of a police officer, who watched her perform the most private of sanitary functions.
The Appellate Division found that Brown’s clearly established constitutional right to be secure in her home and person was violated and therefore she is entitled to damages for the violation of her civil rights. Brown v. State of New Jersey, 442 N.J.Super. 406, 427-28, 124 A.3d 243 (App. Div. 2015). The majority agrees that the police violated her constitutional right under our State Constitution but astonishingly concludes that Brown’s right to be secure in her home was not clearly established at the time. The majority thus cloaks the offending police officer with qualified immunity and denies Brown a remedy under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2.
*114 I dissent because there is no legitimate support in our jurisprudence for the majority’s decision to deny Brown relief. I dissent because this crabbed view of our Civil Rights Act will discourage claimants from seeking relief in our courts. The majority’s parsing of our case law does not do justice to the clearly established right to be free from an unreasonable seizure in one’s own home — the most basic of all rights.
I would affirm the Appellate Division and find that State Police Detective John Steet violated Brown’s clearly established right to be secure in her home from an unreasonable seizure.
I.
Here are the relevant facts. Burglars entered a Cape May County residence, stealing jewelry and other items and driving off in a blue BMW. “The home invasion was apparently a case of drug dealers stealing from drug dealers.” Id. at 411 n.2, 124 A.3d 243. One of the burglary suspects was Carlos Thomas, plaintiff Denise Brown’s boyfriend.
About two weeks later, on November 12, 2008, Brown loaned Thomas her blue BMW. That day, City of Vineland police officers stopped the BMW, arrested Thomas for driving with a suspended license, and impounded the car. The State Police also charged Thomas with the burglary and related offenses — charges that later would be dismissed.
After Thomas’s arrest, the State Police received information from the mother of the putative victim that Thomas had given Brown a locket with diamonds that had been stolen during the burglary. The source of the mother’s information is not clear and may have been second- or third-hand hearsay. Nothing in the record suggests that Brown had any participation in the burglary. Indeed, Brown denied ever receiving a locket from Thomas, and the State Police never found the locket in her apartment or on her person.
A week later, on November 19, 2008, State Police Detective Christian Eskridge secured a warrant to search Brown’s vehicle. *115 The next day, Detective Eskridge searched the vehicle, uncovering jewelry (but no locket), drugs, and a holster that fit the gun allegedly used in the burglary. Detective Eskridge decided that the next step would be to search Brown’s home. Although Detective Eskridge had probable cause to apply for a search warrant, he chose not to do so. Instead, the plan was to ask Brown for her consent to search her home.
That same day, at about 10:00 a.m., State Police Detectives Eskridge and John Steet encountered Brown outside her apartment. They asked if she would consent to the search of her home for the locket, and she refused. She told the detectives that she had no such locket and did not want them searching her “house on hearsay.” She told the detectives, “[G]o to the court and ... get legal documentation and you’re more than welcome to search my house.”
After Brown exercised her right to refuse consent, the detectives gave her two unpalatable options: lock and leave her apartment while they applied for a warrant or remain there under the watchful eye of the police. The detectives at trial admitted that because they told Brown they were looking for the locket, they now feared she might destroy it. This self-created exigency became the rationale for seizing Brown’s apartment, even though the detectives conceded that they had no reason to suspect that Brown was involved in any wrongdoing.
Brown decided to stay in her home. Detective Eskridge went to the courthouse to apply for a warrant while Detective Steet— assisted by a number of back-up officers — remained with Brown. For three-and-one-half hours, until she had to leave for work, Brown was shadowed in her own home. When Brown had to use her bathroom to change a sanitary napkin, a female officer accompanied her. Brown was allowed no vestige of privacy.
At 1:30 p.m., when Brown left for work, the State Police secured the apartment from the outside. At about 4:00 p.m., six hours after the apartment was first seized, Detective Eskridge returned with *116 a search warrant. The State Police entered the apartment with a key provided by Brown’s mother. The State Police apparently searched every nook and cranny in the apartment in a vain attempt to find the locket. As noted earlier, Brown was never charged with burglary, receiving stolen property, or any related offense.
II.
Brown filed suit against the State, Detective Steet, and others under the New Jersey Civil Rights Act (CRA), alleging the violation of her rights under Article I, Paragraph 7 of the State Constitution.[2] After the jury returned a verdict in favor of the State and Detective Steet, the trial court denied Brown’s motion for judgment notwithstanding the verdict (JNOV). The Appellate Division reversed the denial of the JNOV motion as to Detective Steet because the evidence “indisputably” established that the “entry into Brown’s residence before securing the warrant was unlawful as a matter of law.” Id. at 410-11, 124 A.3d 243. More specifically, the Appellate Division found that Detective Steet was not entitled to qualified immunity because his “own testimony establishes, unequivocally, that his warrantless entry into Brown’s home without consent or exigent circumstances violated her rights under our State Constitution” and because the constitutional rights violated by Detective Steet were clearly established at that time. Id. at 427-28, 124 A.3d 243.
The Appellate Division soundly decided that qualified immunity did not apply to Detective Steet’s actions.
III.
A.
The CRA, like its federal corollary, 42 U.S.C.A. § 1983, permits government officials to raise qualified immunity as a defense. *117 “Qualified immunity is a doctrine that shields government officials from a suit for civil damages when ‘their conduct does not violate cleai’ly established statutory or constitutional rights of which a reasonable person would have known.’ ” Gormley v. Wood-El, 218 N.J. 72, 113, 93 A.3d 344 (2014) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982)).
“For a right to be clearly established, ‘[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.’ ” Ibid. (alteration in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531 (1987)). Thus, “[o]fficials are expected to ‘apply general, well-developed legal principles’ in ‘analogous factual situations’ ” rather than “require ‘relatively strict factual identity’ between applicable precedent and the case at issue.” Id. at 114, 93 A.3d 344 (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir. 1989)).
B.
Article I, Paragraph 7 of the New Jersey Constitution provides “[t]he right of the people to be secure in their persons [and] houses .., against unreasonable searches and seizures, shall not be violated.” N.J. Const. art. I, ¶ 7; see also U.S. Const. amend. IV (same). The “chief evil” against which Article I, Paragraph 7 of our State Constitution and the Fourth Amendment are directed is the unlawful entry of the home by government officials. State v. Walker, 213 N.J. 281, 289, 62 A.3d 897 (2013) (quoting State v. Hutchins, 116 N.J. 457, 462-63, 561 A.2d 1142 (1989)). Indeed, “[t]he sanctity of one’s home is among our most cherished rights.” State v. Frankel, 179 N.J. 586, 611, 847 A.2d 561, cert. denied, 543 U.S. 876, 125 S.Ct. 108, 160 L.Ed.2d 128 (2004). The search or seizure of a home without a warrant is presumptively unreasonable and prohibited unless the police possess probable cause and act under exigent circumstances or, alternatively, receive the consent of the homeowner. State v. Johnson, 193 N.J. 528, 552, 940 A.2d 1185 (2008).
*118 Consent is not an issue in this case. Brown exercised a fundamental constitutional right: she refused to give the State Police detectives consent to enter or search her apartment and insisted they obtain a warrant. See Frankel, supra, 179 N.J. at 611, 847 A.2d 661. “The assertion of that constitutional right, which protects the most basic privacy interests of our citizenry, is not probative of wrongdoing and cannot be the justification for the warrantless entry into a home.” Ibid.
No other exception to the warrant requirement permitted the State Police to seize or enter Brown’s apartment. Detective Steet cannot rely on the exigenNeircumstances exception. “For purposes of a warrantless seai’eh, exigent circumstances are present when law enforcement officers do not have sufficient time to obtain any form of warrant.” Johnson, supra, 193 N.J. at 666 n.7, 940 A.2d 1185. For example, when police officers have probable cause to conduct a search but insufficient time to secure a warrant before the potential destruction of evidence, exigent circumstances are present. Hutchins, supra, 116 N.J. at 464, 561 A.2d 1142.
Here, the State Police detectives had probable cause to apply for a warrant to search Brown’s apartment before they arrived at Brown’s home and made their consent request. Instead of getting a warrant, however, they took the more convenient path. The search or seizure of a home cannot be justified by a claim of exceptional or exigent circumstances when “[n]o reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate.” Johnson v. United States, 333 U.S. 10, 14-15, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440-41 (1948).
The police, moreover, cannot create their own exigency to bypass the warrant requirement. See Hutchins, supra, 116 N.J. at 475-76, 561 A.2d 1142. To satisfy the exigent circumstances exception, the State must establish that the “exigent circumstances were not police-created.” Walker, supra, 213 N.J. at 295, 62 A.3d 897. The position taken by Detective Steet is that once he and Detective Eskridge disclosed to Brown that they needed to search *119 her apartment for a stolen locket, her denial of consent gave them a basis to believe she would conceal or destroy potential evidence and therefore a basis to secure the apartment. That reasoning suggests that the detectives not only drew an impermissible inference that Brown would engage in wrongdoing from the assertion of her constitutional right, but also created the very exigency that justified them violation of the warrant requirement.
The majority agrees that exigency did not justify the seizure of or entry into Brown’s apartment. Ante at 230 N.J. at 111-12, 165 A.3d 751-52. Nevertheless, the majority mistakenly suggests that Illinois v. McArthur, 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001), left uncertain the law concerning when and how police officers may secure a home while awaiting a warrant. Ante at 230 N.J. at 102-03, 165 A.3d at 746-47. A close look at McArthur, however, reveals that the United States Supreme Court applied garden-variety notions of exigency to justify the securing of the home in that ease.
IV.
In McArthur, supra, for the purpose of keeping the peace, two police officers accompanied Tera McArthur to the trailer where she lived with the defendant — her husband—so she could remove her belongings. 531 U.S. at 328, 121 S.Ct. at 948, 148 L.Ed.2d at 846. After Tera emerged from the trailer, where the defendant was present, she told one of the officers that the defendant had “dope” in the trailer and had just slid some “underneath the couch.” Id. at 329, 121 S.Ct. at 948-49, 148 L.Ed.2d at 846. That officer knocked on the trailer’s door, told the defendant what his wife had said, and asked for consent to search the trailer. Id. at 329, 121 S.Ct. at 949, 148 L.Ed.2d at 846. The defendant denied consent. Ibid. The officer told the defendant, who at this point was on the trailer’s porch, that he could not reenter the trailer unless escorted by an officer. Ibid. In the meantime, the other officer was sent to secure a search warrant. Ibid. In less than two hours, the other officer obtained a warrant, and the ensuing search of the trailer uncovered marijuana. Ibid.
*120 The Supreme Court upheld the temporary securing of the trailer as reasonable because the case “involve[d] a plausible claim of specially pressing or urgent law enforcement need, ie., ‘exigent circumstances.’ ” Id. at 331, 121 S.Ct. at 950, 148 L.Ed.2d at 847 (emphasis added). The Court specifically found that “the police had good reason to fear that, unless restrained, [the defendant] would destroy the drugs before they could return with a warrant.” Id. at 332, 121 S.Ct. at 950, 148 L.Ed.2d at 848. That was so because, before seeking the defendant’s consent to search, the police had reason to believe that the defendant could deduce that his wife told them about the marijuana stash. Ibid. Thus, the police came to a fair and logical conclusion that the defendant, “suspecting an imminent search, would, if given the chance, get rid of the drugs fast.” Ibid.
The present case and McArthur contrast in many ways. In our case, Brown’s denial of entry triggered the police-created exigent circumstances that led to the seizure of her apartment. Importantly, Brown was not a suspect, and the police had no articulable basis to believe she would destroy evidence of a crime.
In McArthur, the police could not have secured a search warrant before they accompanied the wife to the trailer. The police learned that the defendant had a stash of marijuana in the trailer after arriving on the scene and then immediately concluded he might destroy the evidence before they could secure a warrant. That is the essence of exigent circumstances — the urgent need to preserve evidence pending a warrant application. Another key point in McArthur, unlike the present case, is that exigent circumstances preexisted the consent-to-search request made by the police.
In short, the Supreme Court in McArthur applied well-established principles concerning the exigent-circumstances exception to the warrant requirement. See id. at 330-33, 121 S.Ct. at 949-51, 148 L.Ed.2d at 847-49. The Court upheld the “temporary” seizure of the trailer because the police action “was supported by probable cause and was designed to prevent the loss of evidence while the *121 police diligently obtained a warrant in a reasonable period of time.” Id. at 334, 121 S.Ct. at 951-52, 148 L.Ed.2d at 849 (emphasis added).
In the wake of McArthur, courts understood, as they always have, that the securing of a home — awaiting a warrant application — cannot be justified absent exigent circumstances. See, e.g., Modrell v. Hayden, 636 F.Supp.2d 545, 557 (W.D. Ky. 2009) (“McArthur did not invalidate the ‘presumptively unreasonable’ standard normally applied when determining whether exigent circumstances justified a warrantless entry.”); United States v. Sims, 435 F.Supp.2d 542, 548 (S.D. Miss. 2006) (“[Ujnless exigent circumstances exist (or unless another exception to the warrant requirement is applicable), a law enforcement official has no right to enter a dwelling to detain a suspect in an attempt to secure the premises.”),[3]
V.
Additionally, I do not agree with the majority’s assertion that, since McArthur, the Appellate Division and Law Division have “not advanced a uniform interpretation of the law” concerning the appropriate standard for securing a home pending a search-warrant application. Ante at 230 N.J. at 103-04, 165 A.3d at 746- *122 47. Our courts recognize that the exigent-circumstances doctrine is the governing standard. See State v. Myers, 357 N.J.Super. 32, 37, 813 A.2d 1238 (App. Div. 2003) (framing relevant inquiry as “whether exigent circumstances justified the securing of the [home in question] while the police sought a search warrant”); State v. Josey, 290 N.J.Super. 17, 24, 674 A.2d 996 (App. Div.), certif. denied, 146 N.J. 497, 683 A.2d 200 (1996) (observing that “a warrantless entry into a home may be valid if warranted by exigent circumstances, such as hot pursuit of an armed felon ... [or t]he potential destruction of evidence”); State v. DeLane, 207 N.J.Super. 45, 50, 503 A.2d 903 (App. Div. 1986) (finding that absent exigent circumstances police could not enter home absent warrant); State v. Speid, 255 N.J.Super. 398, 403, 406, 605 A.2d 297 (Law Div. 1992) (stating, in part, that police acted unconstitutionally by securing and searching defendant’s home without warrant absent exigent circumstances or consent).
VI.
The police are obliged to obey the Constitution. Denise Brown had a clearly established right to insist that the police obtain a warrant before searching her home for a locket she told them she did not have. The police could have secured that warrant earlier but chose not to do so. She had a clearly established right to remain secure in her home, pending the arrival of that warrant, given the absence of any true exigent circumstances to justify a seizure of her apartment. Yet, the police treated her like a prisoner in her own home for three-and-one-half hours.
Like the Appellate Division, I find that Detective Steet violated Brown’s clearly established rights protected by Article I, Paragraph 7 of our State Constitution, and therefore he is not entitled to the protection of qualified immunity. The majority has denied Brown her rightful claim to a recovery for the violation of her civil rights.
*123 Accordingly, I respectfully dissent.

 N.J. Const. art. I, ¶ 6 (1844). The 1844 provision was the same as the current Article I, Paragraph 7. N.J. Const. art. I, ¶ 7.

 The claims against other defendants were dismissed before or after trial. In addition, all claims under the Fourth Amendment were dismissed,

 Before McArthur, too, courts required the presence of exigent circumstances to justify the securing of a home while pending a warrant application. See, e.g., United States v. Radka, 904 F.2d 357, 361 (6th Cir. 1990) (“[Warrantless entry into the home of a suspected drug trafficker, effected without an objectively reasonable basis for concluding that the destruction of evidence is imminent, does not pass constitutional muster."); State v. Martin, 139 Ariz. 466, 679 P.2d 489, 497-98 (1984) (finding warrantless seizure of home not justified under exigency exception because inferences did not support belief that evidence would be destroyed in home pending search warrant); State v. Dorson, 62 Haw. 377, 615 F.2d 740, 745 (1980) (finding that detention of several people in home while awaiting warrant was "patently inexcusable” and holding that "required condition precedent to the entry [of home pending warrant] has been the existence of exigent circumstances”); State v. Bean, 89 Wash.2d 467, 572 F.2d 1102, 1105 (1978) (concluding that no exigent circumstances justified police entering defendant's home to "secure” it while awaiting search warrant).