**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1244-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CHAIS K. HILL,
a/k/a CHRIS K. HILL,

     Defendant-Appellant.

_____

     Submitted February 3, 2021 – Decided June 23, 2021

     Before Judges Sumners and Mitterhoff.

     On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment Nos. 15-09-2161 and 17-05-0968.

     Joseph E. Krakora, Public Defender, attorney for appellant (Daniel V. Gautieri, Assistant Deputy Public Defender, of counsel and on the brief).

     Gurbir S. Grewal, Attorney General, attorney for respondent (Steven A. Yomtov, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Chais Hill appeals from his conviction of second-degree distribution of heroin, N.J.S.A. 2C:35-5(b)(2), and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b). On appeal, defendant argues that he did not voluntarily consent to a warrantless search of a white BMW registered to his mother. In addition, he argues the three-and-a-half-year parole disqualifier imposed exceeds the limit allowed by N.J.S.A. 2C:43-6(b).[1] Having reviewed the record and based on the governing law, we find that the motion judge did not make sufficient factual and legal findings pursuant to State v. King, 44 N.J. 346, 352-53 (1965), to facilitate appellate review. We are therefore constrained to remand for further proceedings.

## I.

This matter arises from a warrantless search of defendant's mother's car, which was conducted in the course of the execution of a no-knock warrant at defendant's residence. It is undisputed that the vehicle was not within the scope of the warrant. During a two-day suppression hearing, the State presented the testimony of two officers and produced video footage of defendant's interrogation at the prosecutor's office following his arrest. Defendant also testified.

---

[1] The State does not oppose remanding the case to correct the sentencing error.

Detective-Sergeant Nicholas Erman of the Atlantic County Prosecutor's Office testified that in late 2013, defendant was the target of an investigation conducted by the Atlantic County Prosecutor's Office. The Narcotics Strike Force Unit utilized confidential informants and undercover agents to investigate defendant's sale of narcotics near his home in Egg Harbor City. Detectives used undercover agents to purchase heroin from defendant on approximately nine occasions. As a result of the purchases, the investigators obtained a no-knock search warrant for defendant's residence. On December 18, 2013, at approximately 5:00 a.m., the Narcotics Strike Force Unit, with the help of the Atlantic County SWAT team, executed the warrant. There were six people in the apartment: defendant, his wife, their two small children, defendant's sister, and an uncle. Each of the occupants, with the exception of the children, were placed in handcuffs and seated in the living room.

After defendant was placed under arrest, Erman took him into the kitchen, alone, and questioned him about suspected contraband in the house. Defendant allegedly revealed that he had contraband hidden in a white BMW parked outside the building, as well as heroin in a closet inside the apartment. Prior to

the questioning in the kitchen, defendant had not been given a <u>Miranda</u>[2] warning.

After asking for consent to search the BMW, Erman filled out a consent form, read each line to defendant, then requested his signature.[3] Lieutenant Dylan Hutton of the Egg Harbor City Police Department was then summoned into the kitchen to act as a witness to defendant's signature. The officers uncuffed one of defendant's hands to enable him to sign the form. The box indicating defendant's consent to search the vehicle, however, was left unchecked. At the suppression hearing, Hutton testified that he did not see or hear what occurred in the kitchen before he was summoned to witness defendant's signature. Investigators searched the BMW and found a .380 caliber handgun and heroin in the trunk.

The judge denied the suppression motion, finding "there [was] little indication that defendant's consent was anything but knowing, intelligent[,] and voluntary." Relying on the signed consent form and the officers' testimony, which he deemed credible, the judge found by clear and convincing evidence

---

[2] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

[3] Erman testified that he recognized the vehicle from music videos defendant posted on YouTube, which he watched during the investigation.

A-1244-18

that consent was properly obtained. He concluded that the incomplete consent form was not fatal when weighed against the other evidence.

Pursuant to a plea agreement, defendant plead guilty to second-degree distribution of heroin and second-degree certain persons not to have weapons.[4] In exchange for his guilty plea, the State dismissed the remaining charges under the twenty-count indictment, and recommended concurrent sentences of six years' incarceration with a three-and-a-half-year period of parole ineligibility for the distribution offense, and five years' incarceration with a five-year period of parole ineligibility for the certain persons not to have weapons offense. The sentencing judge accepted defendant's plea, and imposed the recommended sentences.

On appeal, defendant presents these arguments for our consideration:

POINT I

THE TRIAL COURT ERRED IN DENYING [DEFENDANT'S] MOTION TO SUPRESS PHYSICAL EVIDENCE FOUND IN A VEHICLE BECAUSE THE SEARCH WAS THE FRUIT OF A [MIRANDA] VIOLATION AND THE TOTALITY OF THE CIRCUMSTANCES REVEAL THAT ANY

---

[4] Before pleading guilty to the second-degree offenses, defendant was also charged with theft by deception, N.J.S.A. 2C:20-4(a), in an unrelated indictment. He plead guilty and was sentenced to an eighteen months' incarceration, which ran concurrently to the sentences he received for the drug and firearm-related convictions.

CONSENT TO SEARCH WAS NOT KNOWING AND VOLUNTARY.

A. Under the State-Law Privilege Against Self-Incrimination, The Evidence Found in the Vehicle Should be Suppressed as the Fruit of a [Miranda] Violation.

B. The State Failed to Prove that [Defendant] Knowingly and Voluntarily Consented to a Search of His Vehicle Because [Defendant] Was Handcuffed and Under Arrest When He Was Asked to Consent.

POINT II

THE COURT ERRED IN IMPOSING A THREE-AND-ONE-HALF-YEAR PERIOD OF PAROLE INELIGIBILITY ON THE DRUG COUNT.

II.

Our review of the denial of a suppression motion is limited. State v. Handy, 206 N.J. 39, 44-45 (2011). In reviewing a trial judge's ruling on a motion to suppress, "an appellate court . . . must uphold the factual findings underlying the trial court's decision so long as those findings are 'supported by sufficient credible evidence in the record.'" State v. Elders, 192 N.J. 224, 243 (2007) (quoting State v. Elders, 386 N.J. Super. 208, 228 (App. Div. 2006)). This court "should not disturb the trial court's findings merely because 'it might have reached a different conclusion were it the trial tribunal' or because 'the trial court

6

decided all evidence or inference conflicts in favor of one side' in a close case."

Id. at 244 (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). Issues of law, however, are reviewed de novo. State v. Gandhi, 201 N.J. 161, 176 (2010).

First, we reject defendant's invitation to join the five other states that have adopted the exclusionary rule as a remedy when physical evidence is discovered as the result of a Miranda violation.[5] As the United States Supreme Court explained:

> the Miranda rule is a prophylactic employed to protect against violations of the Self-Incrimination Clause. The Self-Incrimination Clause, however, is not implicated by the admission into evidence of the physical fruit of a voluntary statement. Accordingly, there is no justification for extending the Miranda rule to this context. And just as the Self-Incrimination Clause primarily focuses on the criminal trial, so too does the Miranda rule. The Miranda rule is not a code of police conduct, and police do not violate the Constitution (or even the Miranda rule, for that matter) by mere failures to warn. For this reason, the exclusionary rule . . . does not apply.
>
> [U.S. v. Patane, 542 U.S. 630, 636-37 (2004).]

---

[5] Massachusetts, Wisconsin, Ohio, Vermont, and Oregon courts have interpreted their state constitutions to require the suppression of physical evidence that is the "fruit" of a Miranda violation. See Commonwealth v. Martin, 827 N.E.2d 198, 206-07 (Mass. 2005); State v. Knapp, 700 N.W.2d 899, 918 (Wisc. 2005); State v. Farris, 849 N.E.2d 985, 995-96 (Ohio 2006); State v. Peterson, 923 A.2d 585, 593 (Vt. 2007); State v. Vondehn, 236 P.3d 691, 698-700 (Or. 2010).

A-1244-18

In the absence of legislation or authoritative precedent, we believe it unwise to exclude physical evidence as fruit of a <u>Miranda</u> violation, because "[t]he Legislature, not the courts, is best suited to address such policy arguments." <u>Cnty. of Bergen Emp. Benefit Plan v. Horizon Blue Cross Blue Shield of N.J.</u>, 412 N.J. Super. 126, 139 (App. Div. 2010).

Turning to the issue of consent, defendant maintains that the motion judge incorrectly deemed the search to be consensual, and that the circumstances that produced his supposed consent were inherently coercive. The United States Constitution and the New Jersey Constitution both guarantee the right of persons to be free from unreasonable searches and seizures. <u>U.S. Const.</u> amend. IV; <u>N.J. Const.</u> Art. 1 ¶ 7. Warrantless searches are presumptively unreasonable unless, among other exceptions, consent to the search is provided. <u>State v. Bryant</u>, 227 N.J. 60, 69-70 (2016) (quoting <u>State v. Johnson</u>, 193 N.J. 528, 552 (2008)). "The consent must be voluntarily given, and not the result of threat or coercion, express or implied." <u>State v. Speid</u>, 255 N.J. Super. 398, 405 (1992). The critical factor when considering voluntariness is "whether a defendant's will was over-borne in a particular case." <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226 (1973). "[I]f the individual has merely acquiesced in a show of authority, he [or she] should not be found to have consented." <u>U.S. v. Vasquez</u>, 638 F.2d 507,

A-1244-18

524 (2nd Cir. 1980) (citing U.S. v. Sanchez, 635 F.2d 47, 61 (2d Cir. 1980)). "The burden of proof is on the State to establish by clear and positive testimony that the consent was so given." State v. Shaw, 237 N.J. 588, 618-19 (2019) (quoting King, 44 N.J. at 352). Consent is generally a factual question, determined by an assessment of the totality of the circumstances. State v. Koedatich, 112 N.J. 225, 264 (1988). However, trial courts must adhere to established legal principles in evaluating those circumstances.

In its seminal opinion on this subject in King, the Court articulated several factors to guide courts in our state as to whether a person's supposed consent for police to perform a warrantless search is voluntary. 44 N.J. at 352-53. As the Court stated, these following five "King factors" weigh against voluntariness, and tend to show that a person's consent was coerced:

> (1) that consent was made by an individual already arrested; (2) that consent was obtained despite a denial of guilt; (3) that consent was obtained only after the accused had refused initial requests for consent to search; (4) that consent was given where the subsequent search resulted in a seizure of contraband which the accused must have known would be discovered; [and] (5) that consent was given while the defendant was handcuffed.
>
> [Ibid. (citations omitted).]

A-1244-18

Additionally, the Court in King delineated three offsetting factors that can weigh in favor of a finding of voluntariness. Those offsetting factors are: "(1) that consent was given where the accused had reason to believe that the police would find no contraband; (2) that the defendant admitted his [or her] guilt before consent; [and] (3) that the defendant affirmatively assisted the police officers." Id. at 353 (citations omitted).

The Court in King explained that the "existence or absence of one or more of the above factors is not determinative of the [voluntariness] issue." Ibid. Because the factors "are only guideposts to aid a trial judge in arriving at his conclusion," a trial judge should determine the issue of voluntary consent by considering "the totality of the particular circumstances of the case before him [or her]." Ibid. Ultimately, the Court concluded in King, that "the trial judge is in a better position to weigh the significance of the pertinent factors than is an appellate tribunal." Ibid. More recently, in State v. Hagans, the Court reaffirmed the continued applicability of the King factors but reminded us that they should not be applied mechanically, and that, ultimately, the totality of circumstances dictate the outcome. 233 N.J. 30, 42-43 (2018).

Here, the judge's decision upholding the search of defendant's car on consent grounds recited the five King factors that tend to show coercion and

involuntary conduct, as well as the three offsetting factors. Unfortunately, the oral opinion did not apply those individual factors expressly to the facts in this case. To be sure, the judge's opinion discusses the "totality of the circumstances" conceptually. But the decision did not perform the requisite factor-by-factor King analysis to guide the assessment of the circumstances that led to defendant's consent. See R. 1:7-4(a) (mandating adequate statements of reasons that support trial court rulings to enable future appellate review).

We are therefore constrained to remand this matter for the motion judge to perform a complete factor-by-factor King analysis concerning defendant's consent to search the vehicle. To assist in this endeavor, we note that several (but not all) of the factors in the King analysis are clearly present or absent. As to the five involuntariness factors, Erman conceded that King factor one ("consent was made by an individual already arrested" 44 N.J. at 352) is established. Factor four ("consent was given where the subsequent search resulted in a seizure of contraband which the accused must have known would be discovered") is also clearly present. Ibid. Indeed, that point is the very heart of the State's case: that defendant knowingly possessed the drugs and firearm that were found in the vehicle.

The fifth King factor ("consent was given while the defendant was handcuffed") is particularly relevant in this case. Id. at 353. Not only was defendant in handcuffs when his consent to search the BMW was obtained, but each of his adult family members were also in handcuffs in the next room. A no-knock search warrant had been executed just moments before, during which a SWAT team consisting of at least five officers entered defendant's home.

As to the offsetting King factors, we hold that offsetting factor one ("consent was given where the accused had reason to believe that the police would find no contraband") is clearly absent. Ibid. The record establishes that defendant had reason to know the drugs and firearm would be found.

The remaining positive and offsetting King factors are left to the motion judge's careful reassessment. We do not forecast in advance what conclusions the motion judge is likely to draw. If, on closer examination, the judge concludes the King factors weigh against the State and the totality of circumstances reflect involuntariness, the evidence from the BMW must be suppressed and defendant's judgment of conviction shall be vacated, with the State preserving its appellate rights from that ruling. Conversely, if the judge finds the King factors weigh in the other direction and the totality of circumstances indicate defendant's voluntary consent, the denial of the

suppression motion shall be renewed, and defendant may bring a new appeal from that post-remand decision. In the meantime, defendant's judgment of conviction and sentence shall remain unaltered.

### III.

Further, defendant argues that the three-and-a-half-year period of parole ineligibility on his six-year sentence for distribution of heroin exceeded the permissible statutory maximum. We agree. In cases where a parole disqualifier is not mandated, the sentencing court may impose a mandatory minimum term of up to one half the maximum term. See N.J.S.A. 2C:43-6(b). Second-degree distribution of heroin does not require a mandatory minimum more than one-half of the base term. See N.J.S.A. 2C:35-5(b)(1) to (2). Because defendant was sentenced to six years' incarceration, the three-and-a-half-year parole disqualifier is improper. The sentence must be vacated and modified on remand to include no more than a three-year parole disqualifier on the distribution conviction. The State does not oppose a remand to correct the sentencing error.

We reverse the September 26, 2016 order denying defendant's motion to suppress and remand the matter for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1244-18