SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Denise Brown v. State of New Jersey** (A-71-15) (076656)

**Argued January 31, 2017 -- Decided July 25, 2017**

**LaVecchia, J., writing for the Court.**

This appeal concerns the applicability of qualified immunity to a claim brought under the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2, against a police detective named in his individual and official capacity.

The events underlying this appeal relate to a State Police investigation of an October 2008 home invasion. According to witnesses, two men forcibly entered a home, stole belongings, and fled in a blue BMW. A few weeks later, plaintiff Denise Brown loaned her blue BMW to her boyfriend, Carlos Thomas. The State Police suspected that Thomas was involved in the burglary. Officers conducted a traffic stop, arrested Thomas for driving with a suspended license, and impounded Brown's vehicle. On November 20, Detective Eskridge searched Brown's car and found contraband and items linking the car to the home invasion. The State Police received a tip that Thomas had given Brown a locket reported as stolen during the break-in. The locket was not found in the search of Brown's car. As a result, Detective Eskridge determined that the investigation should include a search of Brown's home.

Detective Eskridge decided to ask Brown if she would consent to a search of her home. Detective John Steet of the State Police accompanied him. The detectives arrived at Brown's apartment, told Brown that they had received a tip that Thomas had given her a stolen locket and asked if she would consent to a search of her home for the item. She immediately refused and told the officers to obtain a warrant if they wanted to search her apartment.

Detective Steet testified that Brown's refusal to consent after she learned that the detectives were looking for a stolen locket made him fear that Brown would destroy evidence of the locket if she were permitted to enter the apartment alone. To prevent that possibility, the detectives told Brown that she could either remain outside the apartment, which would be secured by the officers from the outside, or enter the apartment accompanied by a police escort. Both detectives testified that their offer to secure the premises in either of those two ways was consistent with State Police training and approved by a supervisor at the State Police who had been contacted.

Brown chose to enter the apartment, and Detective Steet followed her in. Detective Eskridge left to obtain a warrant. Other officers arrived an hour later. The officers remained in the kitchen, with Brown, while awaiting Eskridge's return. Detective Eskridge, armed with a search warrant, returned and searched the apartment.

Brown filed a complaint against the State of New Jersey, Detectives Steet and Eskridge, and other officers. Defendants raised qualified immunity as a defense. Defendants' motion for summary judgment was denied as to the State Police and Detective Steet. The jury returned a verdict in favor of defendants. The Appellate Division reversed as to whether Detective Steet was entitled to qualified immunity. 442 N.J. Super. 406, 410-11 (App. Div. 2015). The panel concluded that Detective Steet acted unconstitutionally by entering Brown's home without a warrant and identified the warrantless entry as a clear violation of established precedent. The Court granted the Attorney General's petition for certification. 225 N.J. 339 (2016).

**HELD**: In light of the context in which these circumstances arose—i.e., the lack of clarity in the law governing the lawful means by which law enforcement may secure a home pending issuance of a warrant and, significantly, that law's intersection with the law governing the exigent circumstances exception to the warrant requirement—defendant did not violate a "clearly established" right when he entered Brown's home to secure it, and qualified immunity applies.

1. Whether a governmental official is entitled to qualified immunity requires inquiries into whether: (1) the facts, taken in the light most favorable to the party asserting the injury show the officer's conduct violated a constitutional right; and (2) that constitutional right was clearly established at the time that defendant acted. (pp. 15-17)

2. Ordinarily, application of the defense of qualified immunity is a legal question for the court rather than the jury. The record does not clearly indicate that the trial court made a ruling as to the legality of the initial entry into Brown's apartment prior to trial. In the future, it would be more helpful for proceedings to identify with transparency the reasons for delaying a decision on qualified immunity. (pp 17-19)

3. Brown alleges that the police entry into her apartment violated the right of New Jerseyans "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." N.J. Const. art. I, ¶ 7. Under that provision, a warrantless search is presumptively invalid unless the search falls within one of the few well-delineated exceptions to the warrant requirement. One exception is a search justified by probable cause and exigent circumstances. The Attorney General has expressly conceded that, on these facts, "the officers could not have relied on exigent circumstances to search Brown's home while they awaited the warrant." (pp. 19-20)

4. Instead, the Attorney General argues that the entry was lawful under United States Supreme Court case law that has specifically addressed the propriety of securing premises from within to preserve evidence while a search warrant was sought. In a 1984 case, the United States Supreme Court splintered on that pertinent issue. Segura v. United States, 468 U.S. 796 (1984). Confusion engendered by Segura was alleviated to some degree by the Supreme Court's decision in Illinois v. McArthur, 531 U.S. 326 (2001), which held that a police officer was justified in temporarily preventing a defendant from entering his home until a search warrant issued. To the extent that Segura and McArthur can be argued to justify a discrete set of warrantless home entries pending receipt of a requested warrant, they do so specifically in connection with "a plausible claim of specially pressing or urgent law enforcement need, i.e., 'exigent circumstances.'" Id. at 331. (pp. 20-24)

5. In the seven years between McArthur and the conduct at issue in this case, the New Jersey Supreme Court did not opine on the constitutionality of seizing a home by securing it and preventing all access, or alternatively entering it with the occupant, while awaiting a search warrant. Appellate court decisions that considered the issue have not advanced a uniform interpretation of the law. The Court has recently touched on issues presented in Segura and McArthur. State v. Wright, 221 N.J. 456 (2015); State v. Legette, 227 N.J. 460 (2017). That guidance cannot inform the analysis of the conduct in this case because it came years after the contested home entry. (pp. 24-28)

6. As of November 20, 2008, precedent was not sufficiently clear to support a conclusion that Detective Steet violated clearly established law when he entered Brown's home to secure it. And although police department policies do not hold compelling weight in a qualified immunity analysis, Detective Steet's reliance on State Police training and policy is informative when determining the reasonableness of his conduct. Detective Steet is entitled to qualified immunity as to Brown's NJCRA claim because regardless of whether his conduct amounts to a violation of a constitutional right, that right was not clearly established at the time that he acted. (pp. 28-35)

7. The Court adds guidance going forward. In a case of true exigency and probable cause, the police can enter a dwelling. However, police-created exigency designed to subvert the warrant requirement has long been rejected as a basis to justify a warrantless entry into a home. Further, invocation of a person's right to refuse an officer's request for a consent search is not probative of wrongdoing and cannot be the justification for the warrantless entry into a home. In the future, law enforcement officials may not rely on McArthur to enter an apartment to secure it while awaiting a search warrant. Although McArthur does not explicitly permit or forbid entry into a home under those circumstances, this ruling makes clear that officers may not do so. They must get a warrant and, if reasonably necessary, may secure the apartment for a reasonable period of time from the outside. (pp. 35-37)

The judgment of the Appellate Division is **REVERSED**, and the trial court's dismissal of this action against Detective Steet is **REINSTATED**.

**JUSTICE ALBIN, DISSENTING**, notes that in the wake of McArthur, courts understood, as they always have, that the securing of a home—awaiting a warrant application—cannot be justified absent exigent circumstances. According to Justice Albin, Brown had a clearly established right to remain secure in her home, pending the arrival of a warrant, given the absence of any true exigent circumstances to justify a seizure of her apartment. Detective Steet therefore is not entitled to the protection of qualified immunity, in Justice Albin's view.

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion. JUSTICE ALBIN filed a separate, dissenting opinion.**

DENISE BROWN,

    Plaintiff-Respondent,

        v.

STATE OF NEW JERSEY and JOHN
STEET, DETECTIVE (NJSP), both
in his individual and
official capacity as New
Jersey State Police
Detective,

    Defendants-Appellants,

       and

RICK FUENTES, COLONEL, both
in his individual and
official capacity as
Superintendent of New Jersey
State Police, CHRISTIAN
ESKRIDGE, TROOPER (NJSP),
both in his individual and
official capacity as New
Jersey State Trooper, CITY OF
VINELAND, TIMOTHY CODISPOTI,
both in his individual and
official capacity as Vineland
Chief of Police, JOSEPH
VALENTINE, both in his
individual and official
capacity as Vineland Police
Sergeant, DAVID HENDERSCOTT,
OFFICER, both in his
individual and official
capacity as Vineland Police
Officer, OFFICER SMITH, both
in his individual and
official capacity as Vineland
Police Officer, and OFFICER
SOTO, both in her individual

and official capacity as
Vineland Police Officer,

    Defendants.

Argued January 31, 2017 – Decided July 24, 2017

On certification to the Superior Court,
Appellate Division, whose opinion is
reported at 442 N.J. Super. 406 (App. Div.
2015).

David S. Frankel, Deputy Attorney General,
argued the cause for appellant (Christopher
S. Porrino, Attorney General, attorney;
Melissa H. Raksa, Assistant Attorney
General, of counsel).

Carl D. Poplar argued the cause for
respondent (The Riback Law Firm, attorneys;
Mr. Poplar and William A. Riback, on the
briefs).

Rebecca J. Livengood argued the cause for
amicus curiae American Civil Liberties Union
of New Jersey (Edward L. Barocas, Legal
Director, attorney; Ms. Livengood, Mr.
Barocas, Alexander R. Shalom, and Jeanne M.
LoCicero, on the brief).

    JUSTICE LaVECCHIA delivered the opinion of the Court.

    This appeal concerns the applicability of qualified

immunity to a claim brought under the New Jersey Civil Rights

Act (NJCRA), N.J.S.A. 10:6-1 to -2, against a State Police

detective named in his individual and official capacity.[1]

---

[1] One defendant remains in this matter. All other defendants
have been dismissed and all federal claims, which had been
removed to federal court, were dismissed with prejudice.

Plaintiff Denise Brown filed this NJCRA action claiming that her state constitutional rights were violated in 2008 when the defendant State Police officer accompanied her into her apartment, without a warrant and without her consent, in order to secure the premises while awaiting the issuance of a search warrant. Given the options, Brown had declined to grant consent to search her apartment to the two officers who were present and refused to allow the officers to secure the apartment from outside. The parties agree that there was probable cause to believe that Brown had evidence in her home and, in fact, a search warrant was obtained later that day. The officers were in search of evidence of a burglary for which Brown's boyfriend was a suspect, and the officers had reason to believe that a stolen locket necklace had been given to Brown.

To determine whether qualified immunity applies here, two inquiries are pertinent: (1) were plaintiff's constitutional rights violated when the officers insisted that plaintiff be accompanied by an officer inside her apartment in order to secure the premises and its contents while awaiting the search warrant, and (2) was the constitutional right being violated clearly established at the time so that any reasonable officer acting competently in the circumstances would have known of the constitutional violation. The second prong of the inquiry shields a law enforcement officer who has engaged in a violation

3

but does so when acting reasonably under color of law. However, if the officer knew, or objectively should have reasonably known, that he was engaged in a violation of a clear constitutional right, then his unreasonable behavior disentitles the officer to immunity from liability for his actions.

In reviewing the actions that took place in 2008, we declare them to be inconsistent with the protections in Article I, Paragraph 7 of our State Constitution. A law enforcement officer, without a warrant and without consent, may not lawfully insist on entering a residence based on an assertion that exigent circumstances require the dwelling to be secured.

However, in light of the context in which these circumstances arose -- i.e., the lack of clarity in the law governing the lawful means by which law enforcement may secure a home pending issuance of a warrant and, significantly, that law's intersection with the law governing the exigent circumstances exception to the warrant requirement -- we conclude that defendant did not violate a "clearly established" right when he entered Brown's home to secure it. Therefore, we hold that qualified immunity applies and that Brown's claim against the remaining defendant officer was properly dismissed by the trial court.

I.

A.

4

This matter proceeded to trial. Although the defense of qualified immunity was discussed at various points during the proceedings, the issue was not fully resolved pre-trial because the court sent to the jury disputed factual matters that were relevant to the issue before determining the qualified immunity question. We therefore recite the facts as presented and found at trial.

The events underlying this appeal relate to a State Police investigation of a Cape May County home invasion that occurred in October 2008. According to victims and eyewitnesses, two men with handguns forcibly entered a home, stole jewelry and other belongings, and fled in a blue BMW, hauling away stolen goods in a black drawstring bag.

A few weeks later, on November 12, 2008, plaintiff Denise Brown loaned her blue BMW to her boyfriend, Carlos Thomas. At the time, the State Police suspected that Thomas was involved in the burglary. On that date, officers of the Vineland Police Department conducted a traffic stop of the blue BMW, which Thomas was driving, arrested Thomas for driving with a suspended license, and impounded Brown's vehicle. Later that day, the State Police charged Thomas in connection with his alleged involvement in the home invasion. The same day, a State Police representative notified Brown of Thomas's arrest and that the State Police had her vehicle.

The State Police kept Brown's impounded vehicle at headquarters for the next week while continuing to investigate the Cape May County case. On the evening of November 19, State Police Detective Christian Eskridge obtained a warrant to search Brown's car. That evening, he telephoned Brown to inform her that her car would be searched. Detective Eskridge offered to drive Brown to the police station after the search was executed so she could retrieve her car.

On November 20, Detective Eskridge searched Brown's car and found contraband, a gun holster, and other items, including jewelry, linking the car to the home invasion. During the investigation into the burglary, the State Police received a tip that Thomas had given Brown a locket reported as stolen during the break-in. The locket was not among the jewelry found in the search of Brown's car. As a result, Detective Eskridge determined that the investigation should include a search of Brown's home.[2]

---

[2] Detective Eskridge testified that, consistent with the Assistant Prosecutor's advice, "the best bet was to execute the search warrant on the car first" to "obtain additional evidence that [would] build[] the [probable cause] for her apartment." Detective Steet's testimony, aligned with that of Detective Eskridge, indicated that the officers lacked probable cause to search Brown's home until after the search of her car had been completed. As noted, the search of Brown's car did not take place until the morning of November 20, sometime before 10 a.m.

Detective Eskridge was already scheduled that morning to bring Brown to pick up her car; he decided not to first seek a search warrant but instead to ask Brown if she would consent to a search of her home when he went to pick her up. Detective John Steet of the State Police accompanied him. Detective Eskridge explained that if Brown refused consent, he would then proceed to seek a search warrant, securing the premises in the interim by either preventing Brown from entering the home or allowing her access, accompanied by police, to prevent loss or destruction of evidence.

The detectives arrived at Brown's apartment at about 10:00 a.m. on November 20. Brown had recently arrived home from work. She encountered Detectives Eskridge and Steet outside her apartment as she exited a neighbor's apartment. The detectives told Brown that they had received a tip that Thomas had given her a stolen locket and asked if she would consent to a search of her home for the item. She immediately refused and told the officers to obtain a warrant if they wanted to search her apartment. The conversation outside the apartment lasted about fifteen to twenty minutes.

Detective Steet testified that Brown's refusal to consent after she learned that the detectives were looking for a stolen locket made him fear that Brown would destroy evidence of the locket if she were permitted to enter the apartment alone. To

7

prevent that possibility, the detectives told Brown that she could either remain outside the apartment, which would be secured by the officers from the outside,[3] or enter the apartment accompanied by a police escort. Both detectives testified that their offer to secure the premises in either of those two ways was consistent with State Police training and approved by a supervisor at the State Police who had been contacted.

Brown chose to enter the apartment, and Detective Steet followed her in. Detective Eskridge left to obtain a search warrant. Other State Police officers arrived an hour later. The officers remained in the apartment's kitchen, with Brown, while awaiting Eskridge's return from obtaining the warrant from the same Cape May County judge who issued the warrant to search Brown's car. Because Brown's apartment was in Cumberland County, it took several hours for Eskridge to obtain the warrant and return.

At about 1:30 p.m., Brown left to report for work and the officers exited with her.[4] At approximately 4:00 p.m., Detective

---

[3] Steet testified that Brown could have returned to her neighbor's apartment or the detectives could have taken her to pick up her car, as originally intended. However, Brown wanted to go into her own home, and she did not want to consent to a search of her home.

[4] During the time that the officers were in her home, Brown required use of her lavatory. Detective Steet told Brown that she could leave the apartment to use one off-premises, such as a nearby public restroom or a neighbor's bathroom, or she could

Eskridge, armed with a search warrant, returned and searched the apartment. During the search, the officers found a black drawstring bag -- like the one described by the victims and eyewitnesses to the Cape May County home invasion -- but no locket.

B.

Brown commenced the instant matter by filing a complaint in the Law Division against the State of New Jersey, Detectives Steet and Eskridge, and other State Police and Vineland Police Department officers. Among others, Brown advanced an NJCRA claim under N.J.S.A. 10:6-2(c), which provides a cause of action for deprivation of "any substantive rights, privileges or immunities secured by the Constitution or laws of this State,"

---

use her own bathroom but she would have to be accompanied by a female officer. Brown, who had a medical condition, objected and determined to use her own bathroom. A female Vineland police officer was brought in to accompany her. Brown was afforded no privacy during her use of the facilities. Pre-trial, the motion court determined that the many disputed facts over the type of search (visual, strip, or cavity) conducted by the female officer during the bathroom encounter required the denial of summary judgment to all officers (including Steet) still on the premises when that incident occurred. Some confusion, discussed infra, spilled over as to what other facts would be presented to the jury relating to the qualified immunity issues that were not resolved prior to trial. Brown's counsel did not pursue the issue at the time and allowed it to be sorted out at trial. The bathroom incident was not the focus of the qualified immunity issue eventually pursued on appeal. This appeal focuses on entry into the apartment.

alleging a violation of Article I, Paragraph 7 of the New Jersey Constitution, which guarantees freedom from unreasonable searches and seizures.[5] She sought compensatory and punitive damages, a declaratory judgment that defendants' conduct violated her rights, and injunctive relief, along with costs and fees. Defendants denied Brown's allegations and raised qualified immunity as a defense.

Prior to trial, defendants moved for summary judgment, which was granted for certain defendants, including Detective Eskridge; however, the motion for summary judgment was denied as to the State Police and Detective Steet. The trial court reserved decision on the remaining defendants' qualified immunity defense, determining to allow the jury to resolve underlying material questions of fact, after which the court would resolve remaining questions of law related to the immunity defense.

The jury returned a verdict in favor of defendants, finding that Brown failed to prove that: (1) the State Police lacked a good reason to fear the destruction of evidence before seeking the issuance of a warrant; (2) the State Police and Detective

---

[5] Brown's complaint also alleged a violation of the Fourth Amendment of the United States Constitution, but that claim was dismissed prior to trial. Brown v. State, 442 N.J. Super. 406, 416 n.4 (App. Div. 2015).

Steet failed "to reconcile . . . law enforcement needs with [her] privacy interests"; (3) the State Police restricted her movements by preventing her from leaving her apartment; and (4) the State Police restricted "her movements for an unreasonable period."

Brown's motion for a judgment notwithstanding the verdict (JNOV) was denied.

C.

On appeal, the Appellate Division affirmed the trial court's denial of Brown's motion for JNOV as to the State Police, but the panel reversed as to whether Detective Steet was entitled to qualified immunity. Brown v. State, 442 N.J. Super. 406, 410-11 (App. Div. 2015).

The panel concluded that Detective Steet acted unconstitutionally by entering Brown's home without a warrant because his entry was premised on invalid police-created exigency, namely, the detectives' disclosure to Brown of the object of their search and their subsequent reliance on her informed refusal of consent. Id. at 417, 427-28. The panel rejected the argument that Steet's entry was justified under Illinois v. McArthur, 531 U.S. 326, 121 S. Ct. 946, 148 L. Ed. 2d 838 (2001), in which the United States Supreme Court found an officer's entry into the threshold of a home to monitor a suspect's movements pending issuance of a search warrant to be

11

reasonable. Brown, supra, 442 N.J. Super. at 421. Rather, the panel labelled this entry a severe intrusion upon Brown's constitutional privacy rights unsupported by genuine exigency to justify the action. Ibid. Further, the panel identified the officer's warrantless entry into Brown's home as a clear violation of established precedent regarding the protection provided by Article I, Paragraph 7 to privacy rights in a home. Id. at 427. Determining qualified immunity to be inapplicable, the panel remanded for a determination of damages against Detective Steet. Id. at 427-28.

The Attorney General filed a petition for certification to this Court, which was granted. 225 N.J. 339 (2016). We also granted the motion of the American Civil Liberties Union of New Jersey (ACLU-NJ) for leave to appear as amicus curiae.

II.

A.

The State points to United States Supreme Court precedent in arguing for reversal of the panel's decision holding that Detective Steet was not entitled to qualified immunity.

In particular, the State contends that this case is analogous to McArthur, which, the State argues, permits police officers who have probable cause to believe that evidence will be found within a home to offer occupants the choice of remaining outside the residence while awaiting a search warrant

or entering the home only with police accompaniment.  In support of that legal interpretation, the State points to State v. Wright, where this Court found unlawful an officer's warrantless entry into the defendant's apartment at the behest of the defendant's landlord.  221 N.J. 456, 478-79 (2015).  Still, the Court added in its discussion that the officer could have lawfully "secure[d] the apartment or home from the outside, for a reasonable period of time, if reasonably necessary to avoid any tampering with or destruction of evidence" while awaiting the warrant.  Id. at 478 (citing McArthur, supra, 531 U.S. at 334, 121 S. Ct. at 951-52, 148 L. Ed. 2d at 849).  Further, the State argues that the Appellate Division erred when characterizing this case as involving impermissible police-created exigency because it arose from reasonable and constitutional police conduct:  asking for consent to search, as permitted by Kentucky v. King, 563 U.S. 452, 462, 466, 131 S. Ct. 1849, 1858, 1860, 179 L. Ed. 2d 865, 876, 879 (2011).  Pointedly, the State does not argue exigent circumstances as the basis for entry into Brown's home.

In sum, the State argues that Detective Steet is entitled to qualified immunity because, even when viewed in the least favorable light to the State's argued position, New Jersey precedent does not clearly establish that the detective's conduct in securing the premises was unconstitutional -- in

particular, because it was based on "reasonable interpretations of McArthur and King" and was authorized by "current police training."

B.

Brown seeks affirmance of the Appellate Division judgment finding a violation of her state constitutional rights, and therefore a violation of the NJCRA, because Detective Steet entered her home without a warrant, exigent circumstances, or consent.

Brown fundamentally contends that the State's reliance on McArthur is unfounded, emphasizing that the McArthur Court recognized that there can be no entry without a showing of exigency. See 531 U.S. at 331, 121 S. Ct. at 950, 148 L. Ed. 2d at 847. According to Brown, the State relies on impermissible police-created exigency that cannot justify a warrantless entry of the home. She maintains that exigency arose only after the detectives told Brown of the object of their search and after Brown exercised her constitutional right to refuse consent to the search. Thus, on the issue of qualified immunity, Brown argues that Detective Steet is not entitled to the defense because it is well established that an officer may not effectuate a warrantless entry into a home without genuine exigency and that a refusal of consent does not create exigent circumstances.

14

As amicus, the ACLU-NJ supports Brown's position. The ACLU-NJ contends that the State Police lacked sufficient exigency to enter Brown's home without a warrant and urges this Court not to expand exigent-circumstances law in a case such as this, where a police officer told a person the object of his search and then based a claim of exigency on the person's constitutional right to refuse to consent to entry of a home. The ACLU-NJ maintains that such a holding would provide ill-intentioned officers with a means by which to circumvent the warrant requirement.

The ACLU-NJ also counters the State's assertion that McArthur permits the detectives' conduct here. The ACLU-NJ argues that the law enforcement interest in obtaining a stolen locket from a non-suspect's home is meager when compared to the magnitude of the infringement on Brown's privacy rights. And, the ACLU-NJ argues that Detective Steet should be denied the defense of qualified immunity due to the unlawfulness of the police conduct in disregarding Brown's privacy interest in her home, coupled with the disregard of the well-known rules governing warrantless police entry into a home.

III.

A.

The affirmative defense of qualified immunity protects government officials from personal liability for discretionary

15

actions taken in the course of their public responsibilities, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Morillo v. Torres, 222 N.J. 104, 116 (2015) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396, 410 (1982)).  The defense "extends to suits brought under . . . the Civil Rights Act, N.J.S.A. 10:6-1 to -2."  Id. at 107-08.

This state's qualified immunity doctrine tracks the federal standard, shielding from liability all public officials except those who are "plainly incompetent or those who knowingly violate the law."  Id. at 118 (quoting Connor v. Powell, 162 N.J. 397, 409, cert. denied, Badgley v. Connor, 530 U.S. 1216, 120 S. Ct. 2220, 147 L. Ed. 2d 251 (2000)).  To ascertain whether a governmental official, such as Detective Steet, is entitled to qualified immunity requires inquiries into whether: (1) the facts, "[t]aken in the light most favorable to the party asserting the injury[] . . . show the officer's conduct violated a constitutional right"; and (2) that constitutional "right was clearly established" at the time that defendant acted.  Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272, 281 (2001); see Schneider v. Simonini, 163 N.J. 336, 354-55 (2000) ("The 'clearly established law' requirement . . . obligates a court to judge an official's conduct based on the

state of the law and facts that existed at the time of the alleged statutory or constitutional violation." (citing Anderson v. Creighton, 483 U.S. 635, 639, 107 S. Ct. 3034, 3038, 97 L. Ed. 2d 523, 530 (1987))), cert. denied, 531 U.S. 1146, 121 S. Ct. 1083, 148 L. Ed. 2d 959 (2001).  Either of the two prongs may be considered first.  Morillo, supra, 222 N.J. at 118.

B.

Ordinarily, application of the defense of qualified immunity is a legal question for the court rather than the jury; therefore, the defense should be raised and resolved "long before trial."  Schneider, supra, 163 N.J. at 356 (quoting Hunter v. Bryant, 502 U.S. 224, 228, 112 S. Ct. 534, 537, 116 L. Ed. 2d 589, 596 (1991)).  Qualified immunity relieves an eligible defendant from the burden of trial.  See, e.g., Pearson v. Callahan, 555 U.S. 223, 232, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565, 573 (2009) (noting "the importance of resolving immunity questions at the earliest stage in litigation" (quoting Hunter, supra, 502 U.S. at 227, 112 S. Ct. at 536, 116 L. Ed. 2d at 595)).

An exception to that rule arises when the case involves disputed issues of fact.  Schneider, supra, 163 N.J. at 359.  In such a circumstance, the case may be submitted to the jury to determine "the who-what-when-where-why type of historical fact issues," after which the trial judge may incorporate those

17

findings in determining whether qualified immunity applies. Ibid. (internal quotation marks omitted).

C.

In this matter, defendants raised the defense of qualified immunity in connection with their motion for summary judgment, arguing that McArthur applied and provided "the only clearly established, constitutional standard" relevant to the facts. Following argument on the motion, the trial court concluded that a factual dispute existed regarding the circumstances of restricting Brown's private use of her lavatory and the contested search that took place there when accompanied by a female police officer. The trial court determined to grant the motion for summary judgment for the defendants who were "not present when that . . . observation was made in the bathroom," but denied the motion, as presented, for those officers, including Detective Steet, who were still present in Brown's home at the time of the lavatory incident. The record does not clearly indicate that the trial court made a ruling as to the legality of the initial entry into Brown's apartment prior to trial; however, it is clear that the case proceeded to trial on factual issues also associated with the entry into the apartment.

Ultimately, the question of qualified immunity was determinative at trial. The trial court placed on the verdict

18

sheet four issues related to an application of McArthur to the facts of this matter, stating its intention to have the jury decide those issues so that the court could "get an idea factually, historically, because of an argument of qualified immunity," and that once that verdict sheet was returned, the court would "determine the law on the issue of qualified immunity." The court stated that "the entry and whether or not there was an illegal seizure, temporary as it may have been, pending the warrant, is something I think that we're going to let the jury determine." In addition, in determining to charge the jury on McArthur and exigency, the court again stated that if the jurors conclude that the officers "were there and they had a right to be there . . . then the case ends . . . from the jury's standpoint."

The issue of qualified immunity took an unusual route in this matter. In the future, it would be more helpful for proceedings to identify with transparency the reasons for delaying a decision on qualified immunity. Because no motions were made or appeals taken at the time qualified immunity issues were left for the jury, we do not and cannot now weigh in on the propriety of that procedure in light of the facts of this case.

                                 IV.

Here, Brown alleges that the police entry into her apartment violated the right our Constitution bestows on New

19

Jerseyans "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." N.J. Const. art. I, ¶ 7. Under that provision, "a warrantless search is presumptively invalid," State v. Gonzales, 227 N.J. 77, 90 (2016) (quoting State v. Edmonds, 211 N.J. 117, 130 (2012)), "unless [the search] falls within one of the few well-delineated exceptions to the warrant requirement," State v. Maryland, 167 N.J. 471, 482 (2001) (alteration in original) (quoting State v. Citarella, 154 N.J. 272, 278 (1998); citing Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043, 36 L. Ed. 2d 854, 858 (1973)).

A.

New Jersey law establishes that one exception to the warrant requirement of Article I, Paragraph 7 is a search justified by probable cause and exigent circumstances. The Attorney General does not cite the exigency exception to the warrant requirement as a grounds for the officer's entry into Brown's apartment; in fact, the Attorney General has expressly conceded that, on these facts, "the officers could not have relied on exigent circumstances to search Brown's home while they awaited the warrant."

Instead, the Attorney General argues that the entry was lawful under United States Supreme Court case law that has

20

specifically addressed the propriety of securing premises from within to preserve evidence while a search warrant was sought.

In a 1984 case, the United States Supreme Court splintered on that pertinent issue. Segura v. United States, 468 U.S. 796, 104 S. Ct. 3380, 82 L. Ed. 2d 599 (1984). In Segura, supra, police officers had probable cause to believe that they would find drugs in an apartment, but no warrant to conduct a search. Id. at 800, 810, 104 S. Ct. at 3383, 3388, 82 L. Ed. 2d at 605, 612. To prevent the loss of the drug evidence, the officers "secure[d] the premises" from within, leading to a nineteen-hour occupation of the vacant apartment. Id. at 800-01, 104 S. Ct. at 3383, 82 L. Ed. 2d at 605-06.

Two Justices concluded that, assuming the existence of exigency, "securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents." Id. at 810, 104 S. Ct. at 3388, 82 L. Ed. 2d at 612. However, four Justices concluded that the "prolonged occupation" was unconstitutional because it "inevitably involved scrutiny of a variety of personal effects throughout the apartment" and allowed the officers to "exercise[] complete dominion and control over the apartment and its contents." Id. at 820-24, 104 S. Ct. at 3393-96, 82 L. Ed. 2d at 618-22. Ultimately, Segura did not provide a controlling

21

opinion on whether officers may secure a residence from the inside, or outside, while awaiting a search warrant.

Confusion engendered by Segura was alleviated to some degree by the Supreme Court's decision in McArthur, supra, 531 U.S. at 331-33, 121 S. Ct. at 950-51, 148 L. Ed. 2d at 848-49, which held that a police officer was justified in temporarily preventing a defendant from entering his home until a search warrant issued.

In McArthur, two police officers were at the defendant's mobile home on a domestic matter when the defendant's wife suddenly revealed that the defendant had hidden "some dope underneath the couch." Id. at 329, 121 S. Ct. at 948-49, 148 L. Ed. 2d at 846. After one officer requested and was denied consent to search the defendant's trailer, the other officer left to obtain a search warrant; during that interval, the remaining officer refused to permit McArthur to re-enter his home alone. Id. at 329, 121 S. Ct. at 949, 148 L. Ed. 2d at 846. For two hours, McArthur was unable to enter his own home unaccompanied -- when he was allowed to enter the trailer to retrieve cigarettes and make a phone call, the officer "stood just inside the door to observe what [McArthur] did." Id. at 328, 329, 121 S. Ct. at 948, 949, 148 L. Ed. 2d at 846.

The Supreme Court concluded that the officer's conduct in securing the defendant's home did not violate the Fourth

22

Amendment based on the circumstances, which included: (1) probable cause to believe that the officer would find contraband in McArthur's home; (2) the officer's reasonable belief that McArthur, who saw his wife speak to the police upon exiting the trailer, would destroy the contraband if permitted to enter the home alone; (3) reasonable efforts by the officer to balance the need of law enforcement against McArthur's privacy interest; and (4) a period of restraint that "was no longer than reasonably necessary for the police, acting with diligence, to obtain the warrant." Id. at 331-33, 121 S. Ct. at 950-51, 148 L. Ed. 2d at 848-49. Significantly, the Court noted that the officer "stepped inside the trailer's doorway" to monitor McArthur's movement only because McArthur chose to enter the home "for his own convenience," and referred to that restraint as minimally intrusive, especially when compared to a warrantless arrest or search. Id. at 335-36, 121 S. Ct. at 952-53, 148 L. Ed. 2d at 850-51.

Again, to the extent that Segura and McArthur can be argued to justify a discrete set of warrantless home entries pending receipt of a requested warrant, they do so specifically in connection with "a plausible claim of specially pressing or urgent law enforcement need, i.e., 'exigent circumstances.'" Id. at 331, 121 S. Ct. at 950, 148 L. Ed. 2d at 847. There is, therefore, a necessary overlap between home entries pursuant to

23

McArthur and those pursuant to the exigent circumstances exception to the warrant requirement, which also involves a showing of exigency to justify a home entry.  See, e.g., State v. Bolte, 115 N.J. 579, 585-86 (recognizing that combination of probable cause and exigency "may excuse police from compliance with the warrant requirement"), cert. denied, 493 U.S. 936, 110 S. Ct. 330, 107 L. Ed. 2d 320 (1989).

The potential conflation of the two exceptions renders the qualified immunity analysis in this appeal particularly challenging; we therefore hew closely to the Attorney General's focused reliance on the asserted McArthur justification, and consider how New Jersey courts have addressed the specific circumstances of securing premises during the interval in which a warrant is sought.

B.

In the seven years between the decision in McArthur and the conduct at issue in this case, this Court did not opine on the constitutionality of seizing a home by securing it and preventing all access, or alternatively entering it with the occupant, while awaiting a search warrant.

Appellate court decisions that considered the issue have not advanced a uniform interpretation of the law.  Some panels have held that a seizure of a premises from the outside pending a search warrant, even absent exigent circumstances, is

24

permissible. See State v. Josey, 290 N.J. Super. 17, 29 (App. Div.), certif. denied, 146 N.J. 497 (1996); State v. De Lane, 207 N.J. Super. 45, 50 (App. Div. 1986). Other panels have permitted entry into a home to secure evidence to be found therein pending a warrant when coupled with exigent circumstances. See, e.g., State v. Myers, 357 N.J. Super. 32, 36, 39 (App. Div. 2003) (upholding seizure of home from within due to likelihood that defendant, who was aware of investigation, would destroy evidence; lack of knowledge of defendant's whereabouts; and officers' safety concerns). Finally, at least one trial court within the state has held that officers may enter a home to secure it without any showing of exigency at all, so long as they have probable cause to suspect evidence will be found in the residence. State v. Speid, 255 N.J. Super. 398, 403 (Law Div. 1992) ("The police may, with probable cause, enter a home to secure it while a search warrant is obtained." (citing Segura, supra, 468 U.S. 796, 104 S. Ct. 3380, 82 L. Ed. 2d 599)).

Aside from the pending-warrant issue, however, New Jersey precedent generally regarding entry into a home to preserve evidence was not opaque as of 2008. Warrantless entry by a police officer into a residence was not permitted unless the officer obtained the occupant's consent or could demonstrate both probable cause and exigent circumstances. See State v.

25

Hutchins, 116 N.J. 457, 463 (1989). Likewise, case law prior to 2008 suggested that the ideal procedure for the officer who lacks exigency would be to secure a home from the outside. See State v. Stott, 171 N.J. 343, 349-51, 360 (2002); State v. Lewis, 116 N.J. 477, 480, 487-88 (1989); State v. De La Paz, 337 N.J. Super. 181, 198 (App Div.), certif. denied, 168 N.J. 295 (2001). But see State v. Alvarez, 238 N.J. Super. 560, 571 (App. Div. 1990) (concluding that warrantless entry into hotel room to prevent destruction of evidence was constitutional because, "unlike a private home, the ability of police officers to secure or continue a surveillance of a hotel room poses peculiar risks").

C.

We have recently touched on issues presented in Segura and McArthur. In 2015, this Court was asked to consider whether a police officer acted unconstitutionally when he entered and searched the absent-defendant's home at the request of the defendant's landlord, a third party, who had found contraband in the apartment. Wright, supra, 221 N.J. at 459, 461-62. That decision focused on the extension of the third-party intervention doctrine to a situation involving a home, and our Court noted that "[t]he proper course under the State and Federal Constitutions" in that circumstance is to rely on the information provided by a third-party to apply for a search

26

warrant and then, "[i]n the time it takes to get the warrant, . . . secure the apartment or home from the outside, for a reasonable period of time, if reasonably necessary to avoid any tampering with or destruction of evidence." Id. at 478 (citing McArthur, supra, 531 U.S. at 334, 121 S. Ct. at 951-52, 148 L. Ed. 2d at 849).

Relatedly, we also recently instructed that an officer may not insist on accompanying an individual who seeks to enter his home in order to obtain requested credentials. In State v. Legette, a police officer conducting a Terry[6] investigation asked the detained defendant for identification, stated that he "would have to accompany [the defendant] to his apartment" to retrieve it, and then entered the defendant's apartment to monitor the defendant's movements, allegedly for the officer's safety. 227 N.J. 460, 464-65 (2017). This Court held that the officer's conduct was unconstitutional because law enforcement personnel conducting Terry investigations may only act to protect themselves during that limited encounter, and that aim would not be furthered by warrantless entry into a detainee's home. Id. at 473.

In sum, the latest guidance in this general area has ratified the preeminent requirement of a warrant, or clearly

---

[6] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

27

granted consent, before an officer may accompany an individual into the recesses of her home. Exigency creates its own sets of rules, depending on the exception to the warrant requirement relied upon.

Although we include that guidance for completeness, it cannot inform our analysis of the officers' conduct in this case because it came years after the contested home entry. Once again, determination of the existence of whether a constitutional right was clearly established and violated depends, for purposes of qualified immunity analysis, on the state of the law at the time of the alleged violation.

V.

Applying these legal principles to the facts of this case, Detective Steet will be entitled to qualified immunity so long as New Jersey law did not "clearly establish[] that [his] conduct was unlawful in the circumstances." Saucier, supra, 533 U.S. at 201, 121 S. Ct. at 2156, 150 L. Ed. 2d at 281. To make that determination, we must assess whether, on November 20, 2008 (the date of the entry into Brown's home), the law was "sufficiently clear that a reasonable official" in Detective Steet's position would have known that the warrantless entry violated Brown's rights. Anderson, supra, 483 U.S. at 640, 107 S. Ct. at 3039, 97 L. Ed. 2d at 531.

28

The Attorney General argues that Detective Steet relied on McArthur when he asked Brown to choose between not entering her home, letting the detective secure it from the outside, or entering with an officer who would secure it from the inside. In doing so, consistent with police training and supervisor approval in these circumstances, the State maintains that Steet acted reasonably -- not incompetently or knowingly wrongfully -- and should be entitled to the benefit of qualified immunity.

Given McArthur's ambiguity, this Court's lack of precedent regarding McArthur and Segura, and inconsistent interpretations of those cases by the Appellate Division, we are compelled to recognize the force of the State's argument that the parameters of a permissible seizure of a home pending a search warrant were not clearly established within New Jersey when Detective Steet acted, such that a reasonable officer in his position would not have known that his conduct was unlawful. Saucier, supra, 533 U.S. at 202, 121 S. Ct. at 2156, 150 L. Ed. 2d at 282; see, e.g., Morillo, supra, 222 N.J. at 120 (finding qualified immunity applied in context of ambiguous application of statutory exemption).

As of November 20, 2008, neither McArthur itself nor any strain of New Jersey case law interpreting McArthur defined the boundaries within which an officer must abide when securing a residence while awaiting a search warrant. First, McArthur

clearly holds that an officer may secure a home from the outside by preventing a suspect's reentry to preserve evidence that the officer has reason to believe is within the home while he awaits a search warrant. McArthur, supra, 531 U.S. at 328, 121 S. Ct. at 948, 148 L. Ed. 2d at 846. In support of that holding, the Court cited Segura, in which both the majority and minority of the Court agreed that officers seeking to secure a home "might lawfully have sealed the apartment from the outside, restricting entry into the apartment while waiting for the warrant." Id. at 333, 121 S. Ct. at 951, 148 L. Ed. 2d at 849 (emphases added).

Yet, McArthur does not foreclose the possibility that officers might lawfully enter a home to secure it when the occupant, as here, insists on entry. The Court noted that the officer on the scene prevented McArthur from entering his home "unless a police officer accompanied him," but the Court did not explicitly and separately address whether the officer could have "accompanied" McArthur into the residence. Id. at 329, 121 S. Ct. at 949, 148 L. Ed. 2d at 846. In fact, while awaiting a warrant, the officer twice monitored McArthur from inside the door, which the Court labeled an "observation." Id. at 329, 335, 121 S. Ct. at 949, 952, 148 L. Ed. 2d at 846, 850. Moreover, the Supreme Court noted that the limited entry avoided "significant intrusion into the home itself," and cited as support Payton v. New York, 445 U.S. 573, 585, 100 S. Ct. 1371,

30

1379-80, 63 L. Ed. 2d 639, 650 (1980), and United States v. United States District Court, 407 U.S. 297, 313, 92 S. Ct. 2125, 2134, 32 L. Ed. 2d 752, 764 (1972), both of which recognize that "physical entry of the home is the chief evil against which the . . . Fourth Amendment is directed." Id. at 331, 121 S. Ct. at 950, 148 L. Ed. 2d at 847-48.

Finally, in ranking the various "intrusions," the Court held that it would be a greater intrusion to enter a home to conduct a warrantless arrest or search than to "[t]emporarily keep[] a person from entering his home," id. at 336, 121 S. Ct. at 953, 148 L. Ed. 2d at 851, and it would be a greater intrusion to prohibit reentry altogether than to permit it "conditioned on observation," id. at 335, 121 S. Ct. at 952, 148 L. Ed. 2d at 850. However, nowhere in that ranking, or in its opinion, did the Court address the intrusion effected by a warrantless entry to allow for extended observation, as in this case. Instead, McArthur's "language leaves open to debate the intended reach" of its new rule. Morillo, supra, 222 N.J. at 123.

Due to its inherent ambiguity on the subject at issue, McArthur does not clearly establish that Detective Steet acted unlawfully when he entered Brown's home to secure it from within. See ibid. It is likewise not clearly established by McArthur whether Detective Steet could offer Brown the choice of

31

awaiting the warrant outside of her home or inside the home with police accompaniment.

Second, because the scope of McArthur's holding "remains unsettled by any interpretive decision by [New Jersey] courts," Detective Steet cannot fairly be regarded as violating clearly established state law when he entered Brown's home to secure it pending issuance of a search warrant. Ibid. As of November 2008, this Court had neither interpreted McArthur nor defined the extent of permissible police activity under the New Jersey Constitution in light of McArthur. Although we cited McArthur in Wright, supra, as support for the proposition that, rather than enter a home without a warrant, an officer should secure the premises from the outside, the Court did not decide Wright until 2015; therefore, although Wright directs a limited application of McArthur under the New Jersey Constitution, its guidance was not available to Detective Steet at the time of his conduct. 221 N.J. at 478 (citing McArthur, supra, 531 U.S. at 334, 121 S. Ct. at 951–52, 148 L. Ed. 2d at 849).[7]

---

[7] The only New Jersey precedent to have cited McArthur by 2008 was State v. Nikola, which referenced McArthur in support of the seizure of a person, rather than a home, before holding that an officer did not require an arrest warrant to enter the defendant's garage because she had already been seized during a temporary investigative detention at the time of entry. 359 N.J. Super. 573, 583, 586 (App. Div.), certif. denied, 178 N.J. 30 (2003).

Likewise, as of 2008, this Court had not weighed in on Segura's competing analyses regarding an officer's occupation of a home while awaiting a search warrant. The few published Appellate Division decisions interpreting and applying Segura did so inconsistently. As noted previously, one panel determined that an officer acted reasonably in securing a home from within, Myers, supra, 357 N.J. Super. at 39, but two others held that such conduct would be unconstitutional if the facts lacked sufficient exigency, Josey, supra, 290 N.J. Super. at 29, or if the officers could have secured the home from the outside, De Lane, supra, 207 N.J. Super. at 50. Although one Law Division decision interpreted Segura to allow warrantless occupation of a home pending issuance of a search warrant, even without exigent circumstances, Speid, supra, 255 N.J. Super. at 403, no published appellate decision has favorably cited Speid for that proposition.

Based on the lack of New Jersey case law interpreting McArthur or clearly addressing the propriety of seizure of a home from within in order to secure evidence, we find that New Jersey's precedent was not sufficiently clear to support a conclusion that Detective Steet violated "clearly established law" when he entered Brown's home to secure it. Morillo, supra, 222 N.J. at 123.

33

Finally, we note that, although police department policies do not hold compelling weight in a qualified immunity analysis, see City & County of San Francisco v. Sheehan, 575 U.S. ___, 135 S. Ct. 1765, 1777–78, 191 L. Ed. 2d 856, 870 (2015), Detective Steet's reliance on State Police training and policy is of some value. The Supreme Court has found such policies "important to [the Court's] conclusion" regarding qualified immunity when "the state of the law" at the time of the challenged conduct "was at best undeveloped." Wilson v. Layne, 526 U.S. 603, 617, 119 S. Ct. 1692, 1700–01, 143 L. Ed. 2d 818, 832 (1999). When that is the case, "it [is] not unreasonable for law enforcement officers to look and rely on their formal . . . policies." Id. at 617, 119 S. Ct. at 1700–01, 143 L. Ed. 2d at 832.

Here, Detective Steet's supervisor, Sergeant Perry, testified at trial that the State Police have an adopted policy of allowing officers, who are securing a home pending the issuance of a search warrant, to await the warrant inside the home if the occupant chooses to do so. Although not determinative or of controlling weight, we find the existence of such policy to be informative when determining the reasonableness of Detective Steet's conduct, who relied on his police training when confronted with this unsettled area of the law. See ibid., 119 S. Ct. at 1700–01, 143 L. Ed. 2d at 832.

34

In conclusion, we hold that Detective Steet is entitled to qualified immunity as to Brown's NJCRA claim because regardless of whether his conduct amounts to a violation of a constitutional right, that right was not clearly established at the time that he acted.  See Pearson, supra, 555 U.S. at 227, 129 S. Ct. at 813, 172 L. Ed. 2d at 570 (declining to consider constitutional violation prong based on finding no violation of clearly established law).

                              VI.

Although our finding with respect to the State's McArthur argument resolves this matter, we pause to add clearer guidance going forward.

New Jersey recognizes the exigency exception to the warrant requirement.  In a case of true exigency and probable cause, the police can enter a dwelling.  However, police-created exigency "designed to subvert the warrant requirement" has long been rejected as a basis to justify a warrantless entry into a home, in comparison to exigency that arises "as a result of reasonable police investigative conduct intended to generate evidence of criminal activity," which can justify entry.  Hutchins, supra, 116 N.J. at 460, 470; see also State v. Walker, 213 N.J. 281, 295 (2013).  Further, invocation of a person's constitutional right to refuse an officer's request for a consent search "is not probative of wrongdoing and cannot be the justification for

35

the warrantless entry into a home." State v. Frankel, 179 N.J. 586, 611, cert. denied, 543 U.S. 876, 125 S. Ct. 108, 160 L. Ed. 2d 128 (2004); accord State v. Domicz, 188 N.J. 285, 306-09 (2006).

The State does not rely on exigency to justify entry into Brown's home for good reason: police-created exigency cannot form a basis to enter a residence to secure it. In light of our precedent, Detective Steet could not justify entry into Brown's home by notifying her that he was looking for a gold locket necklace as part of a criminal investigation and then relying on her refusal to consent. In other words, Detective Steet could not rely on Brown's decision to refuse consent, informed by her newly acquired knowledge of the object of the officers' search, as "justification for [his] warrantless entry into [her] home," in violation of her rights. Frankel, supra, 179 N.J. at 611. A person answering her door and faced with a request by a law enforcement officer for consent to search her home for a specific item has every right to say no and shut the door. A person asked that question outside her home, in her yard, on her sidewalk, or on her front steps has the equivalent right to walk away, enter her home, and decline the officer the right to

36

enter.[8]  We reaffirm the primacy of one's privacy rights in a home.

Also, in the future, law enforcement officials may not rely on McArthur to enter an apartment to secure it while awaiting a search warrant.  Although McArthur does not explicitly permit or forbid entry into a home under those circumstances, our ruling today makes clear that officers may not do so.  They must get a warrant and, if reasonably necessary, may secure the apartment for a reasonable period of time from the outside.  As a result, because the Attorney General argues, fairly, that reliance on an understanding of McArthur and its reach justified Detective Steet's entry into Brown's home in order to secure it from within and because New Jersey's interpretation of McArthur was not clearly established at the time of his conduct, we conclude that Detective Steet is entitled to qualified immunity.

VII.

---

[8]  Here, the State cites King, supra, 563 U.S. at 466, 131 S. Ct. at 1860, 179 L. Ed. 2d at 879, to argue that the exigency that arose in this matter was not impermissible police-created exigency because the detectives lawfully chose to obtain consent to search Brown's apartment rather than seek a search warrant. However, this Court finds that argument unpersuasive, as the detectives here did not merely seek Brown's consent, but informed her of the object of their search in doing so and then relied on her refusal to find exigency.  In any event, because King was decided in 2011, three years after the events at issue, this Court does not consider that case when analyzing Detective Steet's conduct.

The judgment of the Appellate Division is reversed, and the trial court's dismissal of this action against Detective Steet is reinstated.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion. JUSTICE ALBIN filed a separate, dissenting opinion.

DENISE BROWN,

Plaintiff-Respondent,

v.

STATE OF NEW JERSEY and JOHN
STEET, DETECTIVE (NJSP), both
in his individual and
official capacity as New
Jersey State Police
Detective,

Defendants-Appellants,

and

RICK FUENTES, COLONEL, both
in his individual and
official capacity as
Superintendent of New Jersey
State Police, CHRISTIAN
ESKRIDGE, TROOPER (NJSP),
both in his individual and
official capacity as New
Jersey State Trooper, CITY OF
VINELAND, TIMOTHY CODISPOTI,
both in his individual and
official capacity as Vineland
Chief of Police, JOSEPH
VALENTINE, both in his
individual and official
capacity as Vineland Police
Sergeant, DAVID HENDERSCOTT,
OFFICER, both in his
individual and official
capacity as Vineland Police
Officer, OFFICER SMITH, both
in his individual and
official capacity as Vineland
Police Officer, and OFFICER

SOTO, both in her individual
and official capacity as
Vineland Police Officer,

Defendants.

JUSTICE ALBIN, dissenting.

The constitutional protection against the unreasonable

search and seizure of a home is enshrined in the 1791 Federal

Bill of Rights and our 1844 State Constitution.[1]  The Founders

put in place checks against the abuse of governmental authority

to ensure the sanctity of the home.  Since the beginning of the

Republic, our constitutional jurisprudence has forbidden law

enforcement officials from seizing or entering a home without a

warrant, subject to very limited exceptions.  In the modern era,

the warrantless seizure or entry of a home is impermissible

absent consent or exigent circumstances.  That simple

formulation of the Fourth Amendment and Article I, Paragraph 7

of the New Jersey Constitution has been clear for decades.  It

should have been clear to the State Police detective who

trampled on Denise Brown's rights in 2008.

The police had reason to believe that Brown was given a

stolen locket.  She was not suspected of committing a theft or

knowingly receiving stolen property.  The police had sufficient

---

[1] N.J. Const. art. I, ¶ 6 (1844).  The 1844 provision was the
same as the current Article I, Paragraph 7.  N.J. Const. art. I,
¶ 7.

2

time to secure a warrant for the search of her home, but chose instead to attempt to obtain her consent to search. She lawfully exercised her right to deny the police consent to rummage through every drawer in her home in search of the locket. For exercising that right, the police seized her home for six hours without a warrant, even though no exigent circumstances justified their doing so. Brown was rendered a virtual prisoner in her own home, denied even the right to use her bathroom beyond the prying eyes of a police officer, who watched her perform the most private of sanitary functions.

The Appellate Division found that Brown's clearly established constitutional right to be secure in her home and person was violated and therefore she is entitled to damages for the violation of her civil rights. Brown v. State of New Jersey, 442 N.J. Super. 406, 427-28 (App. Div. 2015). The majority agrees that the police violated her constitutional right under our State Constitution but astonishingly concludes that Brown's right to be secure in her home was not clearly established at the time. The majority thus cloaks the offending police officer with qualified immunity and denies Brown a remedy under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2.

I dissent because there is no legitimate support in our jurisprudence for the majority's decision to deny Brown relief. I dissent because this crabbed view of our Civil Rights Act will

discourage claimants from seeking relief in our courts.  The majority's parsing of our case law does not do justice to the clearly established right to be free from an unreasonable seizure in one's own home -- the most basic of all rights.

I would affirm the Appellate Division and find that State Police Detective John Steet violated Brown's clearly established right to be secure in her home from an unreasonable seizure.

I.

Here are the relevant facts.  Burglars entered a Cape May County residence, stealing jewelry and other items and driving off in a blue BMW.  "The home invasion was apparently a case of drug dealers stealing from drug dealers."  Id. at 411 n.2.  One of the burglary suspects was Carlos Thomas, plaintiff Denise Brown's boyfriend.

About two weeks later, on November 12, 2008, Brown loaned Thomas her blue BMW.  That day, City of Vineland police officers stopped the BMW, arrested Thomas for driving with a suspended license, and impounded the car.  The State Police also charged Thomas with the burglary and related offenses -- charges that later would be dismissed.

After Thomas's arrest, the State Police received information from the mother of the putative victim that Thomas had given Brown a locket with diamonds that had been stolen during the burglary.  The source of the mother's information is

4

not clear and may have been second- or third-hand hearsay. Nothing in the record suggests that Brown had any participation in the burglary. Indeed, Brown denied ever receiving a locket from Thomas, and the State Police never found the locket in her apartment or on her person.

A week later, on November 19, 2008, State Police Detective Christian Eskridge secured a warrant to search Brown's vehicle. The next day, Detective Eskridge searched the vehicle, uncovering jewelry (but no locket), drugs, and a holster that fit the gun allegedly used in the burglary. Detective Eskridge decided that the next step would be to search Brown's home. Although Detective Eskridge had probable cause to apply for a search warrant, he chose not to do so. Instead, the plan was to ask Brown for her consent to search her home.

That same day, at about 10:00 a.m., State Police Detectives Eskridge and John Steet encountered Brown outside her apartment. They asked if she would consent to the search of her home for the locket, and she refused. She told the detectives that she had no such locket and did not want them searching her "house on hearsay." She told the detectives, "[G]o to the court and . . . get legal documentation and you're more than welcome to search my house."

After Brown exercised her right to refuse consent, the detectives gave her two unpalatable options: lock and leave her

5

apartment while they applied for a warrant or remain there under the watchful eye of the police. The detectives at trial admitted that because they told Brown they were looking for the locket, they now feared she might destroy it. This self-created exigency became the rationale for seizing Brown's apartment, even though the detectives conceded that they had no reason to suspect that Brown was involved in any wrongdoing.

Brown decided to stay in her home. Detective Eskridge went to the courthouse to apply for a warrant while Detective Steet -- assisted by a number of back-up officers -- remained with Brown. For three-and-one-half hours, until she had to leave for work, Brown was shadowed in her own home. When Brown had to use her bathroom to change a sanitary napkin, a female officer accompanied her. Brown was allowed no vestige of privacy.

At 1:30 p.m., when Brown left for work, the State Police secured the apartment from the outside. At about 4:00 p.m., six hours after the apartment was first seized, Detective Eskridge returned with a search warrant. The State Police entered the apartment with a key provided by Brown's mother. The State Police apparently searched every nook and cranny in the apartment in a vain attempt to find the locket. As noted earlier, Brown was never charged with burglary, receiving stolen property, or any related offense.

II.

Brown filed suit against the State, Detective Steet, and others under the New Jersey Civil Rights Act (CRA), alleging the violation of her rights under Article I, Paragraph 7 of the State Constitution.[2]  After the jury returned a verdict in favor of the State and Detective Steet, the trial court denied Brown's motion for judgment notwithstanding the verdict (JNOV).  The Appellate Division reversed the denial of the JNOV motion as to Detective Steet because the evidence "indisputably" established that the "entry into Brown's residence before securing the warrant was unlawful as a matter of law."  Id. at 410-11.  More specifically, the Appellate Division found that Detective Steet was not entitled to qualified immunity because his "own testimony establishes, unequivocally, that his warrantless entry into Brown's home without consent or exigent circumstances violated her rights under our State Constitution" and because the constitutional rights violated by Detective Steet were clearly established at that time.  Id. at 427-28.

The Appellate Division soundly decided that qualified immunity did not apply to Detective Steet's actions.

III.

A.

---

[2] The claims against other defendants were dismissed before or after trial.  In addition, all claims under the Fourth Amendment were dismissed.

7

The CRA, like its federal corollary, 42 U.S.C.A. § 1983, permits government officials to raise qualified immunity as a defense. "Qualified immunity is a doctrine that shields government officials from a suit for civil damages when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Gormley v. Wood-El, 218 N.J. 72, 113 (2014) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396, 410 (1982)).

"For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Ibid. (alteration in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523, 531 (1987)). Thus, "[o]fficials are expected to 'apply general, well-developed legal principles' in 'analogous factual situations'" rather than "require 'relatively strict factual identity' between applicable precedent and the case at issue." Id. at 114 (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir. 1989)).

B.

Article I, Paragraph 7 of the New Jersey Constitution provides "[t]he right of the people to be secure in their persons [and] houses . . . against unreasonable searches and

8

seizures, shall not be violated." N.J. Const. art. I, ¶ 7; see also U.S. Const. amend. IV (same). The "chief evil" against which Article I, Paragraph 7 of our State Constitution and the Fourth Amendment are directed is the unlawful entry of the home by government officials. State v. Walker, 213 N.J. 281, 289 (2013) (quoting State v. Hutchins, 116 N.J. 457, 462-63 (1989)). Indeed, "[t]he sanctity of one's home is among our most cherished rights." State v. Frankel, 179 N.J. 586, 611, cert. denied, 543 U.S. 876, 125 S. Ct. 108, 160 L. Ed. 2d 128 (2004). The search or seizure of a home without a warrant is presumptively unreasonable and prohibited unless the police possess probable cause and act under exigent circumstances or, alternatively, receive the consent of the homeowner. State v. Johnson, 193 N.J. 528, 552 (2008).

Consent is not an issue in this case. Brown exercised a fundamental constitutional right: she refused to give the State Police detectives consent to enter or search her apartment and insisted they obtain a warrant. See Frankel, supra, 179 N.J. at 611. "The assertion of that constitutional right, which protects the most basic privacy interests of our citizenry, is not probative of wrongdoing and cannot be the justification for the warrantless entry into a home." Ibid.

No other exception to the warrant requirement permitted the State Police to seize or enter Brown's apartment. Detective

Steet cannot rely on the exigent-circumstances exception. "For purposes of a warrantless search, exigent circumstances are present when law enforcement officers do not have sufficient time to obtain any form of warrant." Johnson, supra, 193 N.J. at 556 n.7. For example, when police officers have probable cause to conduct a search but insufficient time to secure a warrant before the potential destruction of evidence, exigent circumstances are present. Hutchins, supra, 116 N.J. at 464.

Here, the State Police detectives had probable cause to apply for a warrant to search Brown's apartment before they arrived at Brown's home and made their consent request. Instead of getting a warrant, however, they took the more convenient path. The search or seizure of a home cannot be justified by a claim of exceptional or exigent circumstances when "[n]o reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate." Johnson v. United States, 333 U.S. 10, 14-15, 68 S. Ct. 367, 369, 92 L. Ed. 436, 440-41 (1948).

The police, moreover, cannot create their own exigency to bypass the warrant requirement. See Hutchins, supra, 116 N.J. at 475-76. To satisfy the exigent circumstances exception, the State must establish that the "exigent circumstances were not

10

police-created." Walker, supra, 213 N.J. at 295. The position taken by Detective Steet is that once he and Detective Eskridge disclosed to Brown that they needed to search her apartment for a stolen locket, her denial of consent gave them a basis to believe she would conceal or destroy potential evidence and therefore a basis to secure the apartment. That reasoning suggests that the detectives not only drew an impermissible inference that Brown would engage in wrongdoing from the assertion of her constitutional right, but also created the very exigency that justified their violation of the warrant requirement.

The majority agrees that exigency did not justify the seizure of or entry into Brown's apartment. Ante at ___ (slip op. at 36-37). Nevertheless, the majority mistakenly suggests that Illinois v. McArthur, 531 U.S. 326, 121 S. Ct. 946, 148 L. Ed. 2d 838 (2001), left uncertain the law concerning when and how police officers may secure a home while awaiting a warrant. Ante at ___ (slip op. at 23-24). A close look at McArthur, however, reveals that the United States Supreme Court applied garden-variety notions of exigency to justify the securing of the home in that case.

IV.

In McArthur, supra, for the purpose of keeping the peace, two police officers accompanied Tera McArthur to the trailer

11

where she lived with the defendant -- her husband -- so she could remove her belongings. 531 U.S. at 328, 121 S. Ct. at 948, 148 L. Ed. 2d at 846. After Tera emerged from the trailer, where the defendant was present, she told one of the officers that the defendant had "dope" in the trailer and had just slid some "underneath the couch." Id. at 329, 121 S. Ct. at 948-49, 148 L. Ed. 2d at 846. That officer knocked on the trailer's door, told the defendant what his wife had said, and asked for consent to search the trailer. Id. at 329, 121 S. Ct. at 949, 148 L. Ed. 2d at 846. The defendant denied consent. Ibid. The officer told the defendant, who at this point was on the trailer's porch, that he could not reenter the trailer unless escorted by an officer. Ibid. In the meantime, the other officer was sent to secure a search warrant. Ibid. In less than two hours, the other officer obtained a warrant, and the ensuing search of the trailer uncovered marijuana. Ibid.

The Supreme Court upheld the temporary securing of the trailer as reasonable because the case "involve[d] a plausible claim of specially pressing or urgent law enforcement need, i.e., 'exigent circumstances.'" Id. at 331, 121 S. Ct. at 950, 148 L. Ed. 2d at 847 (emphasis added). The Court specifically found that "the police had good reason to fear that, unless restrained, [the defendant] would destroy the drugs before they could return with a warrant." Id. at 332, 121 S. Ct. at 950,

12

148 L. Ed. 2d at 848. That was so because, before seeking the defendant's consent to search, the police had reason to believe that the defendant could deduce that his wife told them about the marijuana stash. Ibid. Thus, the police came to a fair and logical conclusion that the defendant, "suspecting an imminent search, would, if given the chance, get rid of the drugs fast." Ibid.

The present case and McArthur contrast in many ways. In our case, Brown's denial of entry triggered the police-created exigent circumstances that led to the seizure of her apartment. Importantly, Brown was not a suspect, and the police had no articulable basis to believe she would destroy evidence of a crime.

In McArthur, the police could not have secured a search warrant before they accompanied the wife to the trailer. The police learned that the defendant had a stash of marijuana in the trailer after arriving on the scene and then immediately concluded he might destroy the evidence before they could secure a warrant. That is the essence of exigent circumstances -- the urgent need to preserve evidence pending a warrant application. Another key point in McArthur, unlike the present case, is that exigent circumstances preexisted the consent-to-search request made by the police.

In short, the Supreme Court in McArthur applied well-

13

established principles concerning the exigent-circumstances exception to the warrant requirement.  See id. at 330-33, 121 S. Ct. at 949-51, 148 L. Ed. 2d at 847-49.  The Court upheld the "temporary" seizure of the trailer because the police action "was supported by probable cause and was designed to prevent the loss of evidence while the police diligently obtained a warrant in a reasonable period of time."  Id. at 334, 121 S. Ct. at 951-52, 148 L .Ed. 2d at 849 (emphasis added).

In the wake of McArthur, courts understood, as they always have, that the securing of a home -- awaiting a warrant application -- cannot be justified absent exigent circumstances. See, e.g., Modrell v. Hayden, 636 F. Supp. 2d 545, 557 (W.D. Ky. 2009) ("McArthur did not invalidate the 'presumptively unreasonable' standard normally applied when determining whether exigent circumstances justified a warrantless entry."); United States v. Sims, 435 F. Supp. 2d 542, 548 (S.D. Miss. 2006) ("[U]nless exigent circumstances exist (or unless another exception to the warrant requirement is applicable), a law enforcement official has no right to enter a dwelling to detain a suspect in an attempt to secure the premises.").[3]

---

[3] Before McArthur, too, courts required the presence of exigent circumstances to justify the securing of a home while pending a warrant application.  See, e.g., United States v. Radka, 904 F.2d 357, 361 (6th Cir. 1990) ("[W]arrantless entry into the home of a suspected drug trafficker, effected without an objectively reasonable basis for concluding that the destruction

14

V.

Additionally, I do not agree with the majority's assertion that, since McArthur, the Appellate Division and Law Division have "not advanced a uniform interpretation of the law" concerning the appropriate standard for securing a home pending a search-warrant application. Ante at ___ (slip op. at 24-25). Our courts recognize that the exigent-circumstances doctrine is the governing standard. See State v. Myers, 357 N.J. Super. 32, 37 (App. Div. 2003) (framing relevant inquiry as "whether exigent circumstances justified the securing of the [home in question] while the police sought a search warrant"); State v. Josey, 290 N.J. Super. 17, 24 (App. Div.), certif. denied, 146 N.J. 497 (1996) (observing that "a warrantless entry into a home may be valid if warranted by exigent circumstances, such as hot pursuit of an armed felon . . . [or t]he potential destruction of evidence"); State v. De Lane, 207 N.J. Super. 45, 50 (App.

_____

of evidence is imminent, does not pass constitutional muster."); State v. Martin, 679 P.2d 489, 497-98 (Ariz. 1984) (finding warrantless seizure of home not justified under exigency exception because inferences did not support belief that evidence would be destroyed in home pending search warrant); State v. Dorson, 615 P.2d 740, 745 (Haw. 1980) (finding that detention of several people in home while awaiting warrant was "patently inexcusable" and holding that "required condition precedent to the entry [of home pending warrant] has been the existence of exigent circumstances"); State v. Bean, 572 P.2d 1102, 1105 (Wash. 1978) (concluding that no exigent circumstances justified police entering defendant's home to "secure" it while awaiting search warrant).

15

Div. 1986) (finding that absent exigent circumstances police could not enter home absent warrant); State v. Speid, 255 N.J. Super. 398, 403, 406 (Law Div. 1992) (stating, in part, that police acted unconstitutionally by securing and searching defendant's home without warrant absent exigent circumstances or consent).

                                    VI.

The police are obliged to obey the Constitution. Denise Brown had a clearly established right to insist that the police obtain a warrant before searching her home for a locket she told them she did not have. The police could have secured that warrant earlier but chose not to do so. She had a clearly established right to remain secure in her home, pending the arrival of that warrant, given the absence of any true exigent circumstances to justify a seizure of her apartment. Yet, the police treated her like a prisoner in her own home for three-and-one-half hours.

Like the Appellate Division, I find that Detective Steet violated Brown's clearly established rights protected by Article I, Paragraph 7 of our State Constitution, and therefore he is not entitled to the protection of qualified immunity. The majority has denied Brown her rightful claim to a recovery for the violation of her civil rights.

Accordingly, I respectfully dissent.

16